60 Cal.Rptr.3d 534 (2007)
151 Cal.App.4th 951
The PEOPLE, Plaintiff and Respondent,
v.
Lindell Duane TRIPP, Defendant and Appellant.
No. F049845.
Court of Appeal of California, Fifth District.
June 1, 2007.
*536 Han N. Tran, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Raymond L. Brosterhous II and Judy Kaida, Deputy Attorneys General for Plaintiff and Respondent.

*535 OPINION
KANE, J.
We hold that, under the facts of this case, law enforcement's discovery of a small amount of methamphetamine found on a nightstand in a bedroom defendant, Lindell Duane Tripp, shared with his girlfriend, while sufficient to prove his constructive possession of the methamphetamine, is insufficient to prove that defendant knew of its nature as a controlled substance.
Following the denial of his motion to suppress evidence, defendant was convicted by jury trial of possession of methamphetamine. On appeal, he contends (1) the trial court erred by denying the motion to suppress evidence, (2) the trial court erred by admitting statements defendant made in violation of Miranda,[1] (3) the trial court failed to instruct on an element of the offense, (4) insufficient evidence supported the conviction, and (5) defendant's waiver of custody credits was invalid. We conclude there was insufficient evidence to support the element that defendant had knowledge of the narcotic nature of the methamphetamine and therefore we reverse the judgment.

PROCEDURAL SUMMARY
On December 16, 2005, the Kern County District Attorney charged defendant with possession of methamphetamine (Health & Saf.Code, § 11377, subd. (a); count 1) and *537 removing the identification from a tear gas weapon (Pen.Code, § 12422; count 2). Defendant unsuccessfully moved to suppress evidence seized during the search of his residence and a statement he made to the police before he was read his Miranda rights. (Pen.Code, § 1538.5.) During the jury trial, the court granted defendant's motion for judgment of acquittal on count 2. (Pen.Code, § 1118.1.) The jury found defendant guilty on count 1, and the court sentenced him to probation for three years.

FACTS
On November 17, 2005, at about 11:40 p.m., police officers conducted a traffic stop in Bakersfield. The officers arrested the driver, John Reed, and discovered he was on probation for narcotics and was subject to search for narcotics. The car he was driving was registered to defendant. Reed first said he was from Chicago, then said his address was 3937 Balboa Drive in Bakersfield.
Four officers responded to 3937 Balboa Drive. There were two security cameras outside the front of the house. Defendant came to the door and spoke to the officers through his security door. The officers told him they were there to conduct a probation search because Reed had stated the house was his residence. Defendant appeared nervous and asked if they had a search warrant. An officer told him they did not need a warrant because of Reed's probation status. The officer told defendant he needed to open the door so they could conduct the search. Defendant again asked if they had a warrant.
Defendant unlocked the security door and let the officers in. They drew their guns and ordered him to lie down on the floor while they conducted a protective sweep of the house. In the first bedroom, the officers found defendant's girlfriend, Monique Blacklock, and her son asleep in bed. The officers ordered them into the living room. The next bedroom appeared to be used for storage. In the third bedroom, an officer noticed some white crystal powder on a nightstand next to the bed. He said, "Looks like there is some meth over there." The powder was loose, "spilled out, like salt" near the edge of the nightstand. The white powder appeared to be about the size of the head of a pen. There was clothingjeans, T-shirts and men's underwearscattered about. The room contained two television monitors for the security cameras. An officer asked defendant whose bedroom that was and he responded, "That's mine." After the officers finished the protective sweep, they confiscated the white powder. The officers did not perform a field sobriety test on defendant and he was not charged with being under the influence. The white powder was later determined to be 0.12 grams of methamphetamine, a small but usable amount.
Blacklock, who had lived with defendant for about a year and one-half, usually slept in defendant's room. But sometimes she fell asleep in the first bedroom when she put her son to sleep. She kept her clothes in both bedrooms. She denied using methamphetamine or leaving methamphetamine on the nightstand next to the bed.

DISCUSSION
To determine the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible and of solid value, from which a rational trier of fact could find that the elements of the crime were established beyond a reasonable doubt. (People v. Bolden (2002) 29 Cal.4th 515, 553, 127 Cal.Rptr.2d 802, 58 P.3d 931; People v. *538 Jennings (1991) 53 Cal.3d 334, 364, 279 Cal.Rptr. 780, 807 P.2d 1009.) We need not be convinced of the defendant's guilt beyond a reasonable doubt; we merely ask whether "`any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]" {People v. Johnson (1980) 26 Cal.3d 557, 576, 162 Cal.Rptr. 431, 606 P.2d 738.) We must draw all reasonable inferences in support of the judgment. (People v. Wader (1993) 5 Cal.4th 610, 640, 20 Cal.Rptr.2d 788, 854 P.2d 80.) It is not our function to reweigh the evidence, reappraise the credibility of witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact. We may not reverse a conviction for insufficiency of the evidence unless it appears that upon no hypothesis whatever is there sufficient substantial evidence to support the conviction. (People v. Bolin (1998) 18 Cal.4th 297, 331, 75 Cal.Rptr.2d 412, 956 P.2d 374.)
This standard of review also applies to circumstantial evidence. (People v. Rodriguez (1999) 20 Cal.4th 1, 11, 82 Cal.Rptr.2d 413, 971 P.2d 618.) If the circumstances, plus all the logical inferences the jury might have drawn from them, reasonably justify the jury's findings, our opinion that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. (People v. Bradford (1997) 15 Cal.4th 1229, 1329, 65 Cal. Rptr.2d 145, 939 P.2d 259; People v. Panah (2005) 35 Cal.4th 395, 488, 25 Cal. Rptr.3d 672, 107 P.3d 790.) However, "[e]vidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction. Suspicion is not evidence; it merely raises a possibility, and this is not a sufficient basis for an inference of fact. [Citations.]" (People v. Redmond (1969) 71 Cal.2d 745, 755, 79 Cal.Rptr. 529, 457 P.2d 321.) "Circumstantial evidence is like a chain which link by link binds the defendant to a tenable finding of guilt. The strength of the links is for the trier of fact, but if there has been a conviction notwithstanding a missing link it is the duty of the reviewing court to reverse the conviction." (People v. Redrick (1961) 55 Cal.2d 282, 290, 10 Cal.Rptr. 823, 359 P.2d 255.)
The crime of possession of methamphetamine consists of four elements: (1) defendant exercised control over or the right to control an amount of methamphetamine; (2) defendant knew of its presence; (3) defendant knew of its nature as a controlled substance; and (4) the substance was in an amount usable for consumption. (Health & Saf.Code, § 11377, subd. (a); People v. Palaschak (1995) 9 Cal.4th 1236, 1242, 40 Cal.Rptr.2d 722, 893 P.2d 717; CALJIC No. 12.00.) "It is well settled, of course, that in a prosecution for unlawful possession of narcotics, it is incumbent upon the prosecution to present evidence from which the trier of the facts reasonably may infer and find that the accused had dominion and control over the contraband with knowledge of its presence and narcotic character. Mere proof of opportunity of access to a place where narcotics are found will not support a finding of unlaw[f]ul possession. [Citation.]" (People v. Vasquez (1969) 1 Cal. App.3d 769, 777, 82 Cal.Rptr. 131) It is also well settled, however, that each of these essential elements may be proved by circumstantial evidence and any reasonable inferences drawn from such evidence. (People v. Palaschak, supra, at p. 1242, 40 Cal.Rptr.2d 722, 893 P.2d 717; People v. Williams (1971) 5 Cal.3d 211, 215, 95 Cal. Rptr. 530, 485 P.2d 1146.) For example, knowledge of a substance's narcotic nature may be shown by evidence of the defendant's furtive acts and suspicious conduct *539 indicating a consciousness of guilt, such as an attempt to flee or an attempt to hide or dispose of the contraband (see People v. Williams, supra, at pp. 215-216, 95 Cal. Rptr. 530, 485 P.2d 1146; People v. Redrick, supra, 55 Cal.2d at pp. 287-288, 10 Cal.Rptr. 823, 359 P.2d 255 [and cases cited therein]; People v. Eckstrom (1986) 187 Cal.App.3d 323, 331-332, 231 Cal.Rptr. 664; People v. Maese (1980) 105 Cal. App.3d 710, 717, 164 Cal.Rptr. 485; People v. Simmons (1971) 19 Cal.App.3d 960, 965, 97 Cal.Rptr. 283), or by evidence showing a familiarity with the substance, such as needle marks or other physical manifestations of drug use or instances of prior drug use (see People v. Simmons, supra, at p. 965, 97 Cal.Rptr. 283; People v. Thornton (2000) 85 Cal.App.4th 44, 49-50, 101 Cal. Rptr.2d 825; People v. Maese, supra, at p. 717, 164 Cal.Rptr. 485). When the contraband is found in a place to which a defendant and others have access and over which none has exclusive control "no sharp line can be drawn to distinguish the congeries of facts which will and that which will not constitute sufficient evidence of a defendant's knowledge of the presence of a narcotic." (People v. Redrick, supra, at p. 287,10 Cal.Rptr. 823, 359 P.2d 255.)
Here, the prosecution presented evidence that during the officers' protective sweep the officers saw a white crystal powder on a nightstand in defendant's bedroom. The 0.12 grams of crystal powder was spilled out like salt on the edge of the nightstand. The powder was about the size of the head of a pen. Defendant said the room belonged to him. The officers did not test defendant's sobriety and he was not charged with being under the influence. Two other adults occupied the house to some extent. Blacklock lived there and shared defendant's bedroom, although she claimed she did not use methamphetamine and did not leave any on the nightstand; Reed, who had a history with narcotics, claimed to be residing in the home.
Nowhere in this evidence was there proof that defendant knew the powder was methamphetamine. There was no evidence of any methamphetamine paraphernalia nearby or on defendant's person that would connect the powder to ingestion or smoking. There was no evidence of any type of packaging characteristic of methamphetamine. Indeed, one officer described the powder as resembling loose, spilled salt. There was no evidence that defendant attempted to flee or to hide the methamphetamine that would suggest a consciousness of guilt.[2] And there was no evidence that defendant used methamphetamine generally or on any occasion including that night specifically, such that his knowledge of its narcotic nature could be inferred from his familiarity with it. In sum, there was nothing other than the methamphetamine's presence on the nightstand in his room and that was not enough. An evidentiary link was missing.
The People rely on People v. White (1969) 71 Cal.2d 80, 75 Cal.Rptr. 208, 450 P.2d 600 (White) for the proposition that "the mere possession of a narcotic constitutes substantial evidence that the possessor of the narcotic knew of its nature. [Citations.]" (Id. at p. 83, 75 Cal.Rptr. 208, 450 P.2d 600.) Of course, proof of one element does not automatically suffice as proof of another element. Accordingly, *540 the Supreme Court clarified in People v. Williams, supra, 5 Cal.3d 211, 95 Cal. Rptr. 530, 485 P.2d 1146 that, in White, it had not equated possession of narcotics with the knowledge of its nature; the court reiterated that "knowledge by the accused of the character of the contraband is an essential element of the offense of possession. [Citations.]" (People v. Williams, supra, at p. 215, 95 Cal.Rptr. 530, 485 P.2d 1146; see also People v. Winston (1956) 46 Cal.2d 151, 160-161, 293 P.2d 40.) The court explained:
"It is suggested that defendant's knowledge of the character of the tablets found in Shubin's car is supported by the very fact that he was in `possession' of those tablets. It is true that in People v. White, supra, 71 Cal.2d 80, 83[, 75 Cal.Rptr. 208, 450 P.2d 600] this court stated that `the mere possession of a narcotic constitutes substantial evidence that the possessor of the narcotic knew of its nature. (Citations.)' [Citations.] However, in our White case, where marijuana cigarettes and `roaches' were found in defendant's own bedroom, we used the word `possession' in an informal sense to denote the presence of contraband on one's person or among one's own personal effects, rather than to state a rule applicable to all possible situations in which one has dominion and control and immediate access to contraband (i.e., constructive possession). [People v. Anderson (1970) 6 Cal.App.3d 364, 85 Cal.Rptr. 669] states the rule in these words: `Ordinarily the fact that a narcotic is found }n the personal effects of the defendant is compelling proof that defendant knew what he possessed and its nature. [Citation.] It would be most extraordinary that the defendant in this case would attempt to deny that she knew the nature of the green leafy substance which was wrapped in a cellophane bag within a box which she was carrying in her purse.',
"In the instant case, on the other hand, the facts do not justify any reasonable inference that defendant knew the character of the drugs found in Shubin's car. Although defendant may have been in constructive possession of the contraband, such possession alone does not satisfy the requirement of knowledge developed by the cases. [Citation.]
"There is no question that the evidence in this case could form the basis for a strong suspicion of defendant's guilt. However, as we emphasized in People v. Redmond [(1969)1 supra, 71 Cal.2d 74[5], 755, [79 Cal.Rptr. 529, 457 P.2d 321] `[e]vidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction. Suspicion is not evidence; it merely raises a possibility, and this is not a sufficient basis for an inference of fact. (Citations.)' [Citation.] [¶] We conclude that there was no substantial evidence that defendant knew that the tablets in the car were restricted dangerous drugs." (People v. Williams, supra, 5 Cal.3d at pp. 216-217, 95 Cal.Rptr. 530, 485 P.2d 1146.)
In this case, the presence of the methamphetamine on the nightstand in defendant's bedroom certainly raised a strong suspicion of defendant's guilt. But, as in Williams, that suspicion only raised the possibility that defendant knew the powder was methamphetamine. We read Williams as clarifying that the circumstances of the defendant's possession in White so strongly suggested he knew of the drug's narcotic nature that those circumstances also provided proof of the knowledge element. (See People v. Acuna (1973) 35 Cal.App.3d 987, 991, 111 Cal. Rptr. 878 [citing both White and Williams and applying White's holding in light of the *541 circumstances of the case]; People v. Simmons, supra, 19 Cal.App.3d at p. 965, 97 Cal.Rptr. 283 [same; stating that knowledge of the presence of contraband would not necessarily establish defendant's knowledge of its character, but did in that case in light of the circumstances].)
Assuming in this case that defendant possessed the methamphetamine, the circumstances of that possession did not suggest his knowledge of the substance's narcotic nature as they did in White and many other cases. The methamphetamine was not purposefully hidden, packaged in a characteristic manner, prepared for ingestion in a characteristic manner, located with characteristic paraphernalia, or carried on defendant's person as if for personal use. The circumstances simply did not support a reasonable inference that defendant knew the powder was methamphetamine. The speculation that he might have known or the suspicion that he probably knew were insufficient as a basis from which the jury could infer beyond a reasonable doubt that he did know. {People v. Bolden, supra, 29 Cal.4th at p. 553, 127 Cal.Rptr.2d 802, 58 P.3d 931.)
"`A reasonable inference ... "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] ... A finding of fact must be an inference drawn from evidence rather than ... a mere speculation as to probabilities without evidence."' [Citation.] [¶] Evidence is sufficient to support a conviction only if it is substantial, that is, if it `"reasonably inspires confidence"' [citation], and is `credible and of solid value.' [Citations.]" (People v. Raley (1992) 2 Cal.4th 870, 891, 8 Cal.Rptr.2d 678, 830 P.2d 712.) We conclude there was no substantial evidence to support the finding that defendant knew the powder was methamphetamine. We therefore reverse the judgment.[3] Our conclusion here, of course, bars retrial. (People v. Seel (2004) 34 Cal.4th 535, 542, 21 Cal.Rptr.3d 179, 100 P.3d 870.)

DISPOSITION
The judgment is reversed.
WE CONCUR: HARRIS, Acting P.J., and WISEMAN, J.
NOTES
[1] Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
[2] We do not believe defendant's nervous appearance when confronted with four officers at his front door demanding entrance late at night and his asking the officers whether they had a warrant to search his house, without more, were furtive or suspicious actions constituting evidence of consciousness of guilt. Presumably, many people in that position would appear nervous and ask about a warrant.
[3] Although we need not address defendant's remaining contentions, we note that the trial court's failure to instruct on this knowledge element of the crime was reversible error in its own right. A trial court's failure to instruct on an element of a crime is federal constitutional error that requires reversal of the conviction unless it can be shown beyond a reasonable doubt that the error did not contribute to the jury's verdict. (Chapman v. California (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705; Neder v. United States (1999) 527 U.S. 1, 8-15, 119 S.Ct. 1827, 144 L.Ed.2d 35; People v. Flood (1998) 18 Cal.4th 470, 502-503, 76 Cal.Rptr.2d 180, 957 P.2d 869.) (The People's claim that the written instruction was correct and therefore any error in the oral instruction was harmless mistakenly refers to the prosecution's proposed written instruction, not the written instruction actually given to the jury, which was missing the element, as was the oral instruction.) Nevertheless, we emphasize that, even if the jury had been instructed properly on the knowledge element, the conviction could not stand because no evidence was presented that defendant knew of the substance's nature as a controlled substance.