Filed 6/4/13  P. v. Perez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. URIEL PEREZ, Defendant and Appellant. | D061548 (Super. Ct. No. CS252761) |

APPEAL from a judgment of the Superior Court of San Diego County, Esteban Hernandez, Judge.  Affirmed.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton and Sabrina Y. Lane Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Uriel Perez contends there is insufficient evidence to support his

convictions for possession of methamphetamine for sale, possession of a rifle and possession of ammunition. Perez argues that although he was arrested in a motel room where methamphetamine, indicia of drug sales, the rifle and the ammunition were found, it was unreasonable to infer that he possessed any of those items. We reject Perez's challenge to the sufficiency of the evidence. In light of Perez's incriminating behavior both before he was found in the motel room and after he was discovered there, a jury could reasonably infer his connection to the physical evidence found in the motel room and in turn Perez's culpability for the charged offenses.

Perez also argues the trial court abused its discretion in imposing consecutive sentences for his firearm and ammunition convictions. Because the two crimes were separate and distinct offenses, they were properly punished consecutively.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Trial*

Perez was prosecuted on the theory he was a drug dealer with a prior criminal record who planned to sell drugs from a motel room but, in an effort to avoid detection by local law enforcement, arranged for a drug user to rent the motel room in the user's name instead of Perez's. In support of this theory, the prosecutor presented the following evidence:

1. *Motel Room Evidence*

At some point shortly before 7:50 p.m. on the evening of November 13, 2011, a Chula Vista police officer, Brian Carter, was at a Travel Inn motel in Chula Vista looking

2

for stolen vehicles. While at the motel, Officer Brian Carter saw a Jeep Cherokee pull up to the motel and a male passenger, later identified as James Hunter, get out and go into the motel lobby for a very short period of time, come back out and leave in the Jeep Cherokee.

Shortly after Hunter left the motel, another Chula Vista police officer, Eric Carter, stopped the Jeep Cherokee because it made an illegal U-turn. The Jeep Cherokee was being driven by Michael Cripe and Hunter was in the passenger seat. Officer Eric Carter searched the Jeep Cherokee and found a pipe which contained methamphetamine and a checkbook which had been stolen the night before from another vehicle.

At the traffic stop, Officer Eric Carter learned Hunter had just rented a room at the Travel Inn motel and obtained Hunter's permission to search the room. Officers Brian Carter and Albert Garza responded to the scene of the traffic stop, and Officer Brian Carter also received permission to search the room Hunter had rented.

Officers Garza and Brian Carter returned to the Travel Inn motel to search the room Hunter had rented. Officer Garza returned first and saw Perez outside the target room pacing back and forth and talking on a cell phone for five or 10 minutes. When Officer Brian Carter arrived, he and Officer Garza began climbing up separate flights of stairs to the target room. When Officer Garza began climbing the stairs, he saw Perez outside the target room; however, when Officer Garza reached the target room on the fourth floor, Perez was no longer outside the target room.

Officer Garza knocked on the door of the target room and announced: "Chula

3

Vista Police Department." Both Officer Garza and Officer Brian Carter heard the toilet flush. Because the door to the target room had apparently been locked from the inside, a key Officer Garza had obtained did not work and 30 seconds or one minute after Officer Garza knocked on the door, Perez, dressed in his boxer shorts, opened the door.

When the two officers entered the room, they could hear the toilet still running. Perez initially told Officer Brian Carter that his name was Francisco and denied that he was on probation or parole. Both statements were false.

On the floor between the bed and the bathroom door, the officers found a large Ziploc bag that was wet and had a coating of 3.15 grams of methamphetamine. Perez told the officers that he had crushed soap in the bag in order to wash his socks in the toilet.

Officer Garza found a guitar case in the corner of the room; inside the guitar case, Office Garza found a thirty-aught-six rifle, loaded with one round in the chamber. Additional ammunition was found in the guitar case. The officers found a single pair of shoes in the room and a jacket. In the jacket, the officers found more ammunition, $742 in cash, and a piece of paper which listed drug amounts and the corresponding cost of those amounts.

In a nightstand, the officers found a mask that covers an entire face except for the eyes, a knife, handcuffs, zip ties and gloves. The officers did not find anything in the room that could be used to inject, smoke or otherwise ingest methamphetamine.

4

2. *Expert Evidence*

Officer Tim Biffle testified as a narcotics expert. Officer Biffle stated that motels in Chula Vista are hotbeds of criminal activity and that law enforcement officers check hotel registers daily for the names of known criminals. Because of this law enforcement practice, criminals and, in particular, offenders such as Perez who have waived their Fourth Amendment rights, arrange to have associates rent rooms in their names rather than the offenders' names.

According to Officer Biffle, methamphetamine users typically carry the drug in small amounts of one gram or less in small bags. Officer Biffle did not believe a user would carry methamphetamine in a large Ziploc bag such as the one found in Hunter's room because too much of the drug would be lost on the side of the bag. Officer Biffle could think of no reason a person who possessed methamphetamine would want to carry it in a wet bag.

Officer Biffle believed that because 3.15 grams of methamphetamine was on the sides of the Ziploc bag found in Hunter's room, it was likely the bag had previously contained a larger quantity of methamphetamine.

Officer Biffle stated the piece of paper found in the jacket appeared to be a price sheet for an ounce of methamphetamine, broken down into eight 3.5 gram portions or "eight balls," with a price of $250 per eight ball. Officer Biffle further stated that $250 for an eight ball was the then current market price for methamphetamine. The price sheet also indicated that 3 eight balls had been sold, and according to Officer Biffle, that was

5

consistent with the $742 the arresting officers found in the jacket in Hunter's room.

Officer Biffle stated the face mask, knife, handcuffs, zip ties and gloves found in the nightstand were consistent with crimes related to the sale of narcotics and, in particular, rip-offs.

B. *Verdict and Sentence*

At trial, the jury returned a verdict finding Perez guilty of: possession for sale of methamphetamine (Health & Saf. Code, § 11378), possession of a firearm by a possessor of methamphetamine (Health & Saf. Code, § 11370.1, subd. (a)), being a felon in possession of a firearm (Pen. Code, § 12021, subd. (a)(1)), being a prohibited person in possession of ammunition (Pen. Code, former § 12316, subd. (b)(1)), destroying or concealing evidence (Pen. Code, § 135) and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). Perez admitted two prison priors within the meaning of Penal Code section 667.5, subdivision (b).

The trial court sentenced Perez to a total term of eight years.

DISCUSSION

I

On appeal, Perez argues there is insufficient evidence he owned or possessed the drugs, rifle or ammunition found in the motel room and hence his convictions, each of which arise out of his possession or control of those items of contraband, must be reversed. We find ample evidence connecting Perez to the contraband.

6

A. *Legal Principles*

"The standard of review is well settled: On appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] '"[I]f the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder."' [Citation.] 'The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt."' [Citation]." (*People v. Snow* (2003) 30 Cal.4th 43, 66.)

"The essential elements of unlawful possession of a controlled substance are 'dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character. Each of these elements may be established circumstantially.' [Citations.] It has been observed that the statute proscribing the unlawful possession of controlled substances [citations] 'makes possession illegal without regard to the specific intent in possessing the substance.' [Citation.] Although the possessor's knowledge of the presence of the controlled

7

substance and its nature as a restricted dangerous drug must be shown, no further showing of a subjective mental state is required. [Citation.]" (*People v. Martin* (2001) 25 Cal.4th 1180, 1184, fn. omitted.)

B. *Analysis*

Perez argues that notwithstanding the large quantum of evidence connecting him to the items found in the motel room, his behavior at the motel was also consistent with his innocence, and he criticizes Officer Garza and Officer Brian Carter for failing to test the Ziploc bag, the rifle, the guitar case and the ammunition for fingerprints. He also notes that when Officer Garza observed him outside the motel room, he was wearing a sweatshirt; he argues that this fact undermines any inference he owned the jacket later found in the motel room.

Perez is correct that the circumstances he relies upon would support an inference he was simply a guest of Hunter and had no connection to the items found in the room. However, Perez's reliance on the sweatshirt he was wearing outside the motel room is itself somewhat undermined by the fact that shortly thereafter he came to the motel room door in his boxer shorts. His ability and willingness to partially disrobe in fairly short order is consistent with the possibility he owned all the clothes found in the room, including both the jacket and the sweatshirt.

However, more importantly, Perez ignores the very incriminating inferences the jury could draw from the flushing toilet the officers heard, the wet Ziploc bag with methamphetamine residue they found shortly thereafter, the false identity Perez gave, his

8

false denial that he was on probation or parole, and the consciousness of guilt manifested in his attempt to explain the wet bag as a means of washing his socks.

Perez also ignores Officer Biffle's expert testimony and, in particular, Officer Biffle's explanation of why a criminal with a record, such as Perez, would have an associate obtain a motel room in the associate's name.

In sum, the jury could reasonably conclude, based on the simple fact that in a very short period of time Perez was seen first outside the room and then in the room with the toilet flushing, that upon seeing the officers coming up the stairs Perez went back into the room, locked it from the inside and flushed a large quantity of methamphetamine down the toilet. The jury could conclude Perez did so because he in fact was selling methamphetamine, and Hunter had merely obtained the room as a courtesy to Perez.

Having reasonably concluded Perez was selling methamphetamine from the motel room, the jury could further conclude that the gun, ammunition, price sheet and "rip-off" paraphernalia were part of Perez's methamphetamine sales operation and further corroboration of his methamphetamine sales. The jury could reject as improbable the suggestion that the "true" methamphetamine seller left Perez alone in the motel room with a large quantity of the drug, a gun, ammunition, and a price sheet.

In short, there was ample evidence to support Perez's connection to the items found in the motel room and his convictions based on his possession and control of those items.

In this regard, the circumstances here are in marked contrast to those considered in

9

*People v. Tripp* (2007) 151 Cal.App.4th 951, 956-957, where police officers found 0.12 grams of methamphetamine on a nightstand in a bedroom the defendant used, but to which two other adults also had access. The drug appeared to be about the size of a head of a pen, and no evidence of methamphetamine paraphernalia nearby or on the defendant's person connected it to ingestion or smoking; also absent was any evidence of packaging characteristic of methamphetamine or any claim that the defendant attempted to flee or hide the methamphetamine before it was discovered. The defendant had no history of drug use, either in the past or on the evening the drug was discovered. In reversing the defendant's conviction for possession, the court found that given the relatively small amount of the drug the police officers discovered and the fact the defendant did not have exclusive access to the bedroom where it was found, and the absence of any other evidence connecting the drug to the defendant, it was not reasonable to infer the defendant knew the small amount of the substance on his nightstand was methamphetamine. (See *People v. Tripp*, *supra*, at p. 957.)

Here, the record has ample evidence of Perez's consciousness of guilt including, as we have noted, the flushing toilet, the quick disrobing, and the false identity and false criminal record he gave the police officers. There was also tangible evidence of sales, including the large, wet Ziploc bag with 3.15 grams of methamphetamine and the price sheet. Thus, unlike the record in *People v. Tripp*, here the jury could reasonably infer Perez was in fact in the midst of selling methamphetamine at the time the officers started heading toward the motel room.

10

## II

Next, Perez contends the trial court erred in imposing consecutive sentences for his firearm and ammunition convictions. While it is true that ammunition and firearm convictions cannot be separately punished when the ammunition conviction is supported only by ammunition found in the subject firearm, which is the basis for a firearm conviction (see *People v. Lopez* (2004) 119 Cal.App.4th 132, 138), as we have noted here in addition to a single round found in the rifle, the police officers also found ammunition in the guitar case and the jacket. That additional ammunition is evidence of a crime separate and distinct from Perez's possession of the rifle. The additional ammunition permitted Perez to use the rifle on an ongoing basis in support of not only the drug sales but any other crimes Perez may have been inclined to commit, including the rip-offs discussed by Officer Biffle. The trial court did not err in punishing it separately.

## DISPOSITION

The judgment of conviction is affirmed.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

McINTYRE, J.

11