Filed 4/28/14  P. v. Cornejo CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058617 |
| v. | (Super.Ct.No. BLF1200243) |
| FRANCISCO FLORES CORNEJO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  James S. Hawkins, Judge. Affirmed with directions.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Francisco Flores Cornejo appeals from his conviction of knowingly possessing heroin while he was incarcerated in Ironwood State Prison, in violation of Penal Code section 4573.6, subdivision (a). He contends the trial court abused its discretion by permitting the People to introduce evidence of a prior uncharged incident in which a handmade syringe was found in his cell in another state prison. According to defendant, this evidence was inadmissible under Evidence Code[1] section 1101, subdivision (b), because it was not directly relevant to proving the current possession charge. Even if the evidence was relevant, defendant contends the probative value of the evidence was substantially outweighed by its prejudicial impact, and the trial court abused its discretion by not excluding the evidence pursuant to section 352.

We conclude the prior uncharged conduct was probative to proving defendant knew the controlled substance he possessed was heroin, and its probative value was not substantially outweighed by its prejudicial impact. We therefore affirm.

I.

FACTS

Officer Hull testified he is a correctional officer at Ironwood State Prison (Ironwood) and he worked with the prison's Investigation Services Unit (ISU), which investigates crimes committed by prisoners such as use of and trafficking in narcotics. If a prisoner is suspected of possessing narcotics, the ISU's protocol is to perform a search of the unclothed prisoner, the prisoner's clothing, and the prisoner's body cavities and

_____

[1] All further undesignated statutory references are to the Evidence Code.

2

genitals.  On a daily basis, the ISU found prisoners who hid contraband in their anal cavity.

On August 7, 2011, Hull was informed by prison staff defendant might be under the influence of a controlled substance.  When Hull made contact with defendant, he checked defendant's body for anything indicative of being under the influence of a controlled substance and found what appeared to be two injection sites on defendant's arm.  Hull then performed an unclothed body search of defendant and saw what appeared to be a shiny lubricant around defendant's anus, which Hull testified is indicative of secreting contraband from prison staff.  Defendant related to Hull he told staff he had been drinking alcohol because he did not want them to know he took "a shot of heroin."  Hull found no contraband on defendant, but placed defendant on contraband watch.

Former Officer Sumbler testified he previously worked as a correctional officer at Ironwood.  Sumbler conducted a contraband watch of defendant on August 8, 2011.  When defendant defecated, Sumbler searched defendant's feces and found a white latex bindle.  After washing off the bindle with soap and water, Sumbler handed the bindle over to Officer Griego, the ISU officer for the day.

Officer Griego testified she was assigned to the ISU at Ironwood during the time in question, and she was an evidence custodian and drug test officer, among other things.  On August 8, 2011, Griego received a call from a sergeant directing her to collect the contraband Sumbler discovered in defendant's feces.  Griego recovered the bindle from Sumbler and conducted a presumptive field test on its contents, which showed the

substance inside the bindle was heroin. Griego then placed the contents of the bindle into an evidence envelope to be sent to the Department of Justice (DOJ) for further testing.

Mrs. Hughes, a DOJ criminalist, testified she received for testing the substance found in the bindle defendant defecated. After performing a chemical test on the substance, Hughes concluded it was heroin.

Officer Garcia testified he was assigned to the ISU at Calipatria State Prison (Calipatria). On August 21, 2007, he and his partner conducted a surprise search of defendant's cell. When the officers opened the food port to the cell door, Garcia saw defendant jump from the top bunk, grab something from the top of a desk with his right hand, and then squat down between the desk and a locker. Defendant placed his right hand between his boxer shorts and his buttocks. Garcia ordered defendant to lie down in a prone position, and then sprayed defendant with pepper spray to make him comply. The officers then removed defendant from the cell, searched defendant, and found nothing on him.

Inside the cell, Garcia found a handmade syringe on the desk within arm's reach from where he saw defendant squat. In a bucket between the desk and the locker, close to where defendant squatted down, Garcia found two bindles containing a black tar-like substance. Garcia testified prisoners are not permitted to have syringes, and typically handmade syringes are used for intravenously injecting narcotics such as methamphetamine and heroin. On cross-examination, Garcia testified the bindles and handmade syringe were accessible to both defendant and his cellmate.

4

Officer Dominguez, an investigator at Calipatria, testified he spoke to defendant about the August 21, 2007, search of his cell. Defendant told Dominguez when Garcia and his partner arrived at the door to his cell, he jumped from the top bunk, retrieved a handmade syringe, then squatted down and placed the syringe between his buttocks. Defendant also told Dominguez after Garcia sprayed him with pepper spray, defendant removed the syringe from his buttocks and placed it on the top shelf of a locker as he was getting down to a prone position on the floor.

The judge instructed the jury if it concluded the People proved the uncharged 2007 offense by a preponderance of the evidence, it could only consider the evidence for the limited purpose of deciding whether defendant knew the nature of the controlled substance he was alleged to have possessed in the current offense. The court also instructed the jury in evaluating the evidence of the uncharged 2007 offense, it was to consider the similarity or dissimilarity between the uncharged offense and the charged offense of possession.

The jury found defendant guilty on the sole count of knowingly possessing heroin while in state prison, in violation of Penal Code section 4573.6, subdivision (a). Defendant then admitted he suffered four strike priors (Pen. Code, §§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)), and admitted he suffered three prison priors (Pen. Code, § 667.5, subd. (b)). The trial court sentenced defendant to the middle term of three years in state prison for the drug possession conviction, which was doubled pursuant to the two strikes law, and imposed three one-year terms for each of the admitted prison priors, for a

5

total of nine years in prison to run consecutively[2] to the term defendant was already serving.

Defendant timely appealed.

## II.

## DISCUSSION

Defendant contends the trial court erred prejudicially by permitting the People to introduce evidence of the 2007 uncharged incident in which a handmade syringe was discovered in his cell at Calipatria. According to defendant, the prior uncharged incident was not probative to proving he knew the nature of the contents of the bindle he defecated because the People introduced no evidence the syringe contained heroin. We disagree.

"'Subdivision (a) of [Evidence Code] section 1101 prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion. Subdivision (b) of section 1101 clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition,' such as identity,

---

[2] Neither the oral sentence nor the minute order and abstract of judgment reflect defendant's sentence in this case must be served fully consecutively to the prison sentence he was serving at the time of his in-prison offense. (Pen. Code, §§ 667, subd. (c)(8), 1170.1, subd. (c); see *People v. White* (1988) 202 Cal.App.3d 862, 869-870.) We will direct the superior court clerk to correct the minutes of sentencing and prepare an amended abstract of judgment.

common plan, or intent. [Citation.] Evidence of uncharged crimes is admissible to prove identity, common plan, and intent 'only if the charged and uncharged crimes are sufficiently similar to support a rational inference' on these issues. [Citation.]" (*People v. Edwards* (2013) 57 Cal.4th 658, 711.)

"'The admissibility of other crimes evidence depends on (1) the materiality of the facts sought to be proved, (2) the tendency of the uncharged crimes to prove those facts, and (3) the existence of any rule or policy requiring exclusion of the evidence.' [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 22.) "'Because this type of evidence can be so damaging, "[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded." [Citation.]' [Citation.]" (*People v. Fuiava* (2012) 53 Cal.4th 622, 667 (*Fuiava*).)

"'If evidence of prior conduct is sufficiently similar to the charged crimes to be relevant to prove the defendant's intent, common plan, or identity, the trial court then must consider whether the probative value of the evidence "is 'substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' (Evid. Code, § 352.)" [Citation.]'" (*People v. Rogers* (2013) 57 Cal.4th 296, 326 (*Rogers*).) Although evidence of uncharged offenses is inherently "damaging" to the defendant's case (*Fuiava*, *supra*, 53 Cal.4th at p. 667), exclusion under section 352 is only merited when the prejudicial impact of the evidence *substantially outweighs* its probative value. "The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant,

7

highly probative evidence. '[All] evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging."' [Citation.]" (*People v. Karis* (1988) 46 Cal.3d 612, 638.)

"'"'Rulings made under [Evidence Code sections 1101 and 352 . . .] are reviewed for an abuse of discretion. [Citation.]" [Citation.] "Under the abuse of discretion standard, 'a trial court's ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citation.]" [Citation.]' [Citation.]" (*Rogers*, *supra*, 57 Cal.4th at p. 326.)

"'It is well settled, of course, that in a prosecution for unlawful possession of narcotics, it is incumbent upon the prosecution to present evidence from which the trier of the facts reasonably may infer and find that the accused had dominion and control over the contraband with knowledge of its presence and narcotic character. . . .' [Citation.] It is also well settled, however, that each of these essential elements may be proved by circumstantial evidence and any reasonable inferences drawn from such evidence. [Citations.]" (*People v. Tripp* (2007) 151 Cal.App.4th 951, 956 (*Tripp*).)

As defendant states in his opening brief, his knowledge of the nature of the substance found inside the bindle he defecated was at issue. He did not stipulate to such

knowledge and, at trial, evidence was introduced that prisoners hide other forms of contraband in their anuses, such as tobacco. Therefore, the People could seek to introduce evidence of uncharged drug offenses under section 1101, subdivision (b), to prove such knowledge. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 400, fn. 4 (*Ewoldt*).) "In prosecutions for drug offenses, evidence of prior drug use and prior drug convictions is generally admissible under Evidence Code section 1101, subdivision (b), . . . to prove knowledge of the narcotic nature of the drugs. [Citation.]" (*People v. Williams* (2009) 170 Cal.App.4th 587, 607 [Fourth Dist., Div. Two]; see also *People v. Perez* (1974) 42 Cal.App.3d 760, 767-768 [Fourth Dist., Div. Two].)

The evidence of defendant's prior drug offense was sufficiently similar to the current charge and was probative to proving his knowledge of the nature of the substance he hid in his anus. In the 2007 incident, defendant grabbed a handmade syringe from a desk and tried to hide it between his buttocks during a search of his cell. Along with the syringe, officers found two bindles containing a black tar-like substance in a bucket near where defendant squatted down. Officer Garcia testified prisoners use handmade syringes to intravenously inject narcotics such as methamphetamine and heroin. In the current offense, Officer Hull saw what appeared to be two injection sites on defendant's arm, where he may have injected himself with narcotics, and defendant told Hull he lied to prison staff about drinking alcohol to cover up the fact he took "a shot of heroin." Finally, Hull saw defendant had a shiny lubricant around his anus, which indicated defendant was hiding something in his anal cavity, and the bindle defendant subsequently defecated contained heroin. Although the handmade syringe was not tested for the

9

presence of narcotics, both incidents relate to possession and use of narcotics that may be injected intravenously. Defendant's prior possession of a syringe, which most assuredly was not for the purpose of consuming contraband tobacco, was relevant to establishing defendant knew the bindle he hid in his anus contained heroin and not something else.

Nor was the probative value of the prior incident substantially outweighed by the prejudicial impact the evidence would have on defendant's jury. In determining whether evidence of the uncharged offense prejudiced defendant, one factor we weigh is whether "[t]he testimony describing defendant's uncharged acts . . . was no stronger and no more inflammatory than the testimony concerning the charged offenses." (*Ewoldt*, *supra*, 7 Cal.4th at p. 405.) The evidence of defendant's current offense, which involved fairly graphic testimony about shiny lubricant around defendant's anus and a white bindle found in defendant's feces, was by itself sufficiently damaging to defendant. The additional evidence that four years earlier defendant was found possessing a handmade syringe was not likely to inflame the jury so much that it could not fairly consider the evidence. Moreover, the judge took great pains to properly instruct the jury it was only to consider the evidence of the syringe incident for the purpose of determining whether the People proved defendant knew the nature of the contents of the bindle. We must presume the jury understood and followed that instruction. (*People v. Homick* (2012) 55 Cal.4th 816, 853.) Therefore, we conclude the trial court did not abuse its discretion by permitting the People to introduce evidence of the uncharged syringe incident under section 1101, subdivision (b).

Finally, even if we were to find the trial court abused its discretion by permitting the People to introduce evidence of the syringe incident, we may only reverse the judgment if we conclude the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13; *People v. Richardson* (2008) 43 Cal.4th 959, 1001; see also § 353, subd. (b).) Evidentiary error is harmless unless it is reasonably probable defendant would have received a more favorable result absent the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836; see *People v. Fudge* (1994) 7 Cal.4th 1075, 1103.)

Officer Hull testified defendant had two possible injection sites on his arm, and defendant admitted he took a shot of heroin. That defendant was familiar with narcotics that are injected intravenously, in particular with heroin, was evidence from which a jury could reasonably conclude defendant knew the substance he possessed was in fact heroin. (See *Tripp*, *supra*, 151 Cal.App.4th at p. 956 ["knowledge of a substance's narcotic nature may be shown by evidence . . . showing a familiarity with the substance, such as needle marks or other physical manifestations of drug use or instances of prior drug use"].) Moreover, defendant hid the bindle containing heroin inside his anal cavity. The lengths to which defendant went to hide the bindle from prison staff is also circumstantial evidence from which a jury could reasonably have concluded defendant knew the nature of what was contained inside it. (*Ibid.* ["suspicious conduct indicating a consciousness of guilt" is circumstantial evidence the defendant knew the nature of the narcotics he possessed].) Because it is not reasonably probable a jury would have acquitted defendant if the trial court had excluded the prior offense evidence, we must conclude any error was harmless.

## III.

## DISPOSITION

The clerk of the superior court is directed to amend the minutes of sentencing and prepare an amended abstract of judgment to reflect defendant's sentence in this case shall be served fully consecutively to the prison term he was serving when he committed his in-prison offense of possessing narcotics.  (Pen. Code, §§ 667, subd. (c)(8), 1170.1, subd. (c).)  The clerk shall then forward the amended minute order and abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:


RAMIREZ
P. J.


KING
J.

12