Filed 7/17/24  P. v. Lopez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MANUEL LOPEZ,<br><br>    Defendant and Appellant. | D081757<br><br><br>(San Diego County Super. Ct. No. SCD287164) |

APPEAL from a judgment of the Superior Court of San Diego County, Peter C. Deddeh, Judge.  Affirmed.

Justin Behravesh, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Caelle McKaveney, Deputy Attorneys General, for Plaintiff and Respondent.

Manuel Lopez hit 67-year-old Allen Stokes in the head with a mallet causing severe brain injury and leaving Stokes bedridden until he died over three years later.  A jury convicted Lopez of second-degree murder (Pen. Code,[1] § 187, subd. (a)) and found true the allegations that he personally used a deadly and dangerous weapon (§ 12022, subd. (b)(1) and used a weapon (Cal. Rules of Court, rule 4.421(a)(2)).  The trial court sentenced him to 15 years to life, doubled for a prior strike, plus one year for the personal use of a deadly weapon.

Lopez contends insufficient evidence supports his conviction because no reasonable trier of fact could have found the prosecution proved beyond a reasonable doubt that Stokes's death was criminal.  He notes Stokes suffered from multiple chronic health conditions before the incident and the forensic pathologist was initially unsure as to his manner of death.  We reject Lopez's contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Lopez shared a dormitory style apartment with Stokes and Godfrey Q. Godfrey described 67-year-old Stokes as an "able-bodied" man who drove and needed no assistance walking or caring for himself.  In the early morning hours of March 12, 2016, Godfrey heard Stokes get up as he often did.  He heard Stokes talking to Lopez, followed by a loud thump and moaning.  When he left his bedroom, he saw Stokes on the floor, bleeding profusely from the head.

Stokes sustained multiple skull and facial fractures and had multiple areas of bleeding within the brain.  He underwent emergency surgery to alleviate brain swelling and remove a blood clot.  After his hospital stay, Stokes could not speak, move his arms or legs upon command, or swallow.

---

[1]     Undesignated statutory references are to the Penal Code.

He required a gastric feeding tube and a bladder catheter and spent the rest of his life bedridden in skilled nursing facilities or the hospital without any improvement. Stokes's condition progressively declined and he suffered from recurrent lung and bladder infections. On November 8, 2019, over three years after the attack, he developed sepsis and died.

An autopsy revealed his cause of death was due to several complications of remote blunt head trauma with cardiovascular disease and pulmonary emphysema listed as contributing factors. The forensic pathologist initially listed the manner of death as undetermined. She later met with a detective and received additional investigative materials such as scene photographs, DNA results, Lopez's statements, and radiology images. After reviewing these materials, she changed the manner of death to a homicide.

## DISCUSSION

The sole issue raised on appeal is whether there is sufficient evidence that the killing was criminal. Lopez argues the evidence is insufficient because Stokes suffered from hypertension, heart disease, strokes, and emphysema, and these chronic conditions would have led to his death regardless of the blunt force trauma Lopez inflicted on him. We disagree.

To determine the sufficiency of the evidence, "we review the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible and of solid value, from which a rational trier of fact could find that the elements of the crime were established beyond a reasonable doubt." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955.) We must "view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."

3

(*People v. Lewis* (1990) 50 Cal.3d 262, 277.) Reversal based on insufficient evidence is warranted only if "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) " '[I]t is the jury, not the appellate court which must be convinced of the defendant's guilt . . . .' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055–1056.) The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction, unless that testimony is physically impossible or inherently improbable. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

A homicide conviction requires proof that the defendant's conduct proximately caused the victim's death. (*People v. Butler* (2010) 187 Cal.App.4th 998, 1009.) California courts have long held "that there may be multiple proximate causes of a homicide, even where there is only one known actual or direct cause of death." (*People v. Sanchez* (2001) 26 Cal.4th 834, 846.) Additionally, longstanding precedent establishes that a victim's preexisting medical condition does not relieve a defendant of liability for murder so long as the condition " 'is not the *only* substantial factor bringing about [the] death.' " (*People v. Catlin* (2001) 26 Cal.4th 81, 155.) " 'To be considered the proximate cause of the victim's death, the defendant's act must have been a substantial factor contributing to the result, rather than insignificant or merely theoretical.' " (*People v. Jennings* (2010) 50 Cal.4th 616, 643.)

Where, as here, a death occurs beyond three years and a day after an attack, there is a rebuttable presumption that the killing was not criminal. (Pen. Code, § 194.) The People have the burden of overcoming this presumption. (*Ibid.*) The court instructed the jury on this principle

(CALCRIM No. 512) and the concept that multiple factors may cause a death. Specifically, a modified version of CALCRIM No. 620 informed jurors:

> "There may be more than one cause of death. An act causes death only if it is a substantial factor in causing the death. A *substantial factor* is more than a trivial or remote factor. However, it does not need to be the only factor that causes the death.
>
> "[The victim] may have suffered from an illness or physical condition that made him more likely to die from the injury than the average person. The fact that [the victim] may have been more physically vulnerable is not a defense to murder. If the defendant's act was a substantial factor causing the death, then the defendant is legally responsible for the death. This is true even if [the victim] would have died in a short time as a result of other causes or if another person of average health would not have died as a result of the defendant's actions.
>
> "If you have a reasonable doubt whether the defendant's act caused the death, you must find him not guilty."

A reasonable trier of fact could conclude from the evidence that Lopez's attack was a substantial cause of Stokes's death. Before the attack, despite suffering from chronic cardiovascular disease and emphysema, Stokes lived alone without assistance. The attack resulted in injuries that rendered Stokes a bedridden quadriplegic with a bladder catheter and gastric feeding tube. The forensic pathologist explained that Stokes's immobility impaired his lung function, predisposing him to infections like pneumonia. The bladder catheter and feeding tube further heightened Stokes's susceptibility to infection. Stokes's medical records revealed he suffered from recurrent urinary tract infections and recurrent aspiration pneumonia. In the hours before his death, a physician treated Stokes for acute hypoxic respiratory failure (an inability to breath), sepsis, and a possible gastrointestinal bleed.

5

The forensic pathologist explained Stokes suffered from recurrent infections because of the assault. An acute infection then caused sepsis which stressed Stokes's already diseased heart and lungs and caused his death. Stokes's treating physician in the hours before death similarly testified that sepsis stresses vital organs, especially the heart and lungs. He stated that sepsis caused Stokes's respiratory failure and resulted in death within a few hours. This evidence is sufficient to support a finding that Lopez's assault caused Stokes to suffer medical complications which ultimately led to his death. On this record, the jury reasonably concluded Lopez's assault was a substantial factor causing Stokes's death.

Lopez also notes the forensic pathologist initially listed the manner of death in her report as undetermined and she did not change the manner of death to a homicide until after meeting with law enforcement, arguing this impacted the pathologist's credibility. But it was for the jury to assess the credibility of the pathologist's explanation for changing her opinion regarding the manner of death from undetermined to homicide after she received additional investigative materials regarding the assault. Notably, she listed complications from blunt head trauma as the cause of death even before classifying the manner of death as a homicide. It is not our function as a reviewing court to reweigh the evidence or substitute our own judgment on factual matters such as the credibility of the experts. Accordingly, we conclude that the evidence is sufficient to support the conviction.

DISPOSITION

The judgment is affirmed.


                                                        BUCHANAN J.

WE CONCUR:



HUFFMAN Acting P. J.



KELETY, J.

7