Filed 6/2/23  P. v. Fennell CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JEREMY DON FENNELL,<br><br>Defendant and Appellant. | F082818<br><br>(Super. Ct. No. CR-19-007754)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Linda A. McFadden, Judge.

Matthew Barhoma for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis A. Martinez and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Jeremy Don Fennell (appellant) shot and killed Lawrence Walker in the parking lot behind appellant's tattoo shop.  A jury convicted appellant of second degree murder

(Pen. Code, § 187, subd. (a))[1] and found true the enhancement for the personal discharge of a firearm causing great bodily injury or death (§ 12022.53, subd. (d)). The trial court sentenced appellant to 40 years to life in state prison.

On appeal, appellant contends the trial court should have modified CALCRIM No. 3472 to specify that a defendant who provokes only a nondeadly confrontation does not lose the right to self-defense if the victim responds with deadly force. We conclude such a modification was not supported by substantial evidence. We also reject appellant's claims that his murder conviction was not supported by substantial evidence, and that he is entitled to the retroactive application of Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1). We affirm.

## BACKGROUND

### I.      Appellant Shoots and Kills Walker.

On March 15, 2019, Walker and his girlfriend, Jessica Estrada, were sitting on the sidewalk next to the parking lot behind appellant's tattoo shop. Walker and Estrada were homeless at the time and living together on the street. They did not know appellant and had never interacted with him before.

Appellant drove into the parking lot behind his business and parked his car in the space directly in front of Walker and Estrada. Appellant's wife was in the front passenger's seat. Estrada testified that as soon as appellant opened his door to exit his car, he asked, "Are you guys going to be leaving soon?" Estrada responded, "We're going to leave in just a couple minutes." Once appellant exited, Estrada was able to see appellant was holding a firearm between his elbow and his side.

According to Estrada, appellant said, "You better hurry the fuck up and get the fuck out of here." Walker, who was still sitting on the sidewalk, replied, "Just because you have a gun doesn't mean you have the right to be a prick." Appellant took a step

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

2.

toward Walker and said, "Shut the fuck up, faggot, and get your homeless shit out of here." Walker stood up and took a step toward appellant. Walker told appellant to watch his mouth, that he and Estrada were just sitting there, and that there was no need to "cause issues."

Estrada testified appellant drew his firearm, pointed it at Walker, and repeatedly stated, "Don't come any closer," and "Don't be stupid." Walker told appellant, "[P]ut the gun away so we can fight and I can beat your ass." Estrada called out to Walker three times, and after the third time, Walker gestured toward her and said, "Let's get the fuck out of here. This isn't even worth my time." Appellant continued to tell Walker, "Don't be stupid," and not to come any closer. Walker said, "I don't see why—why there needs to be an issue. Just let us go." Walker then took one step forward and to his left, and appellant shot him once in the chest. Walker immediately collapsed.

After firing the shot, appellant pointed the gun at Estrada and told her to get on the ground. Appellant and his wife then walked into his tattoo shop. Appellant walked back out a few moments later and called 911. Estrada remained with appellant until police arrived. Walker died from the gunshot wound.

A police officer arrived at the scene within minutes of the shooting. The officer contacted appellant and seized a .40-caliber handgun from his back pocket.

Law enforcement personnel processed the scene for evidence. No weapons were found on Walker's person. A single expended cartridge casing was located on the ground in the parking lot. A folding multitool was located on the sidewalk near where Walker was sitting when appellant first approached him. A black glove was located where Walker collapsed. A toxicological examination of Walker's blood revealed low levels of methamphetamine and morphine.

3.

## II.    The Shooting was Captured on Video Surveillance.

The above incident was captured on high quality surveillance video from two different angles.  The surveillance video shows appellant park his car in the parking space immediately in front of where Walker was sitting.  As appellant exits his car and walks toward the entrance to his shop, he appears to say something to Walker and Estrada, who are seated on the sidewalk.  Appellant stops before he passes Walker, turns, and takes two steps toward him.  At this point, Walker is still sitting on the sidewalk.  Appellant moves to within a few feet of him.  Walker begins to stand up, and appellant reaches with his right hand to draw his firearm, which he was holding under his left arm.  Once Walker is to his feet, he takes a step toward appellant.  Appellant points the firearm at Walker and begins to walk backward.  Walker then takes several additional steps toward appellant as appellant takes corresponding steps away from Walker.  Walker is unarmed and holding what the evidence shows to be a black glove in his left hand.

Appellant and Walker stop moving and face each other for approximately 20 seconds.  Walker's hands remain at his sides, and he makes no aggressive movements.  At one point, he appears to gesture toward Estrada.  He then takes a step forward and to his left, off the curb of the sidewalk and onto the asphalt of the parking lot.  Approximately one second after he takes the step, appellant shoots him, and he immediately falls to the ground.

When appellant fired the shot, Walker was approximately five to six feet away from him.[2]  Walker was standing upright with his arms at his side, and there is no indication he was preparing to move toward appellant.

---

[2]    There is no evidence in the record of the *precise* distance between appellant and Walker at the moment appellant fired the shot.  Our approximation of this distance is based on our review of the surveillance footage admitted into evidence.  We also considered appellant's testimony that the roadway leading into the parking lot is "probably only ten feet across."  The surveillance video shows appellant was standing

### III. Appellant's Prior Statements Regarding the Homeless.

The People admitted prior statements by appellant showing animus toward the homeless. When appellant's tattoo shop was burglarized in August 2018, he told the responding officer that the homeless in town are "the filthiest, nastiest people I've ever met in my life." When his tattoo shop was again burglarized in January 2019, he told the responding officer about an interaction he had with a store employee when buying a surveillance system: "I said hey I gotta buy this for 2,000 bucks because all the homeless people fucking with my building. This [store employee] said, I don't know why we don't just, we can build stadiums for sports, why don't we build stadiums for homeless people. I said fuck yeah, put them all in there and burn it down. She flipped the fuck out. I said bitch I'm here spending 2,000 bucks on cameras because of homeless people, don't tell me we need to buy them a fucking stadium."

The People also admitted a social media post by appellant titled: STOP "HELPING" THE HOPELESS (homeless). In the body of the post, appellant referred to the non-homeless as "real humans," and stated: "When you people put together packages you are basically aiding the hopeless drug addicts that attack us every single day!! If we can not kill them all like we can other pests then we must not feed the wild drug addicts."

### IV. Appellant's Testimony.

Appellant testified that when he exited his car, he asked Walker and Estrada, "Hey, guys, you been here long?" Estrada responded, "We just got here." Appellant told them, "I need you guys to get your stuff together and take off, we are going to open for business." He heard Walker say, "I'm not afraid of your gun." Walker immediately became inexplicably angry. He began yelling unspecified "vulgar" threats and had "rage

---

near the center of this roadway when he fired the shot. Walker, having just stepped off of the curb, was standing at the very edge of the roadway.

5.

in his eyes." Appellant believed Walker was on drugs and described him as a "wild animal."

Appellant testified that once Walker stood up, he drew his gun "in self-defense in the hope [he] wasn't going to have to use it." He told Walker to "stop" and to "stay back." Appellant thought Walker had a butterfly knife in his hands, which he claimed Walker held in an "aggressive manner." He could only recall fragments of what Walker said, but remembers Walker saying, "Shoot me," to which he replied, "I don't want to shoot you, don't take another step." He claimed that Walker lunged at him immediately before he pulled the trigger. He testified he shot Walker because he was afraid for his life and did not think he had any other choice.

## V.     Additional Defense Evidence.

Appellant called two security guards who testified Walker threatened and attacked them at a shopping center in 2017. One security guard stated that when he asked Walker and Estrada to leave, Walker became aggressive and moved to jump on him. The security guard reacted grabbing Walker, and they wrestled each other to the ground. As he struggled to get control of Walker, Estrada hit him in the head with a hard object. When he saw Walker at the shopping center the next day, Walker threatened to shoot him. The other security guard described a different incident in which he told Walker and Estrada to leave, and Walker threatened to kill him.

Appellant also called several expert witnesses. A professor of pharmacy described the effects of methamphetamine use. A forensic analyst testified he reviewed the surveillance footage and concluded Walker had an object in his left hand but could not identify the object. Finally, an expert on the use of deadly force described the physical and psychological symptoms commonly exhibited by a person after the use of deadly force.

6.

## DISCUSSION

**I.     The Trial Court Properly Instructed the Jury on the Law of Self-defense. Any Presumed Error was Harmless.**

Appellant contends the trial court erred by failing to modify CALCRIM No. 3472 (Right to Self-Defense:  May Not be Contrived).  He argues the instruction as given contained an incomplete statement of the law because it suggested that a person who instigates an altercation to provoke a nondeadly quarrel loses the right to self-defense, even if the victim responds with deadly force.  He also contends the prosecutor misled the jury by arguing that appellant lost his right to self-defense because he was the initial aggressor.

We disagree.  We conclude CALCRIM No. 3472 is an accurate statement of the law, and, on these facts, the jury was properly instructed.  We also conclude the prosecutor's arguments were proper and did not mislead the jury.  In any event, any presumed error was harmless under any standard.

### A.     Background.

The trial court instructed the jury with the following language from CALCRIM No. 3472:  "A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force."

The trial court also instructed the jury with CALCRIM No. 3471 (Right to Self-Defense:  Mutual Combat or Initial Aggressor), which was given as follows:

"A person who engages in mutual combat or who starts a fight has a right to self-defense only if:

"1.     He actually and in good faith tried to stop fighting;

"AND

"2.     He indicated, by word or by conduct, to his opponent, in a way that a reasonable person would understand, that he wanted to stop fighting and that he had stopped fighting;

7.

"3.    He gave his opponent a chance to stop fighting.

"If the defendant meets these requirements, he then had a right to self-defense if the opponent continued to fight.

"A fight is mutual combat when it began or continued by mutual consent or agreement.  That agreement may be expressly stated or implied and must occur before the claim to self-defense arose."

## B.    Standard of Review.

In a criminal case, a trial court must instruct on the general principles of law relevant to the issues raised by the evidence.  (*People v. Diaz* (2015) 60 Cal.4th 1176, 1189.)  Instruction is required for those legal principles " 'closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.'  [Citations.]"  (*Ibid.*)

Substantial evidence must exist for a trial court to provide a particular jury instruction.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1206.)  In this context, substantial evidence "would allow a reasonable jury to make a determination in accordance with the theory presented under the proper standard of proof."  (*Ibid.*)  In other words, "[s]ubstantial evidence is evidence sufficient to 'deserve consideration by the jury.' " (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.)

We review a claim of instructional error de novo.  (*People v. Cole*, *supra*, 33 Cal.4th 1158, 1210.)  "When considering a claim of instructional error, we view the challenged instruction in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner."  (*People v. Houston* (2012) 54 Cal.4th 1186, 1229.)  We presume jurors are intelligent persons capable of understanding and correlating all instructions given.  (*People v. Gonzales* (2011) 51 Cal.4th 894, 940; *People v. O'Malley* (2016) 62 Cal.4th 944, 991.)  "We interpret the instructions so as to support the judgment if they are

reasonably susceptible to such interpretation, and we presume jurors can understand and correlate all instructions given." (*People v. Vang* (2009) 171 Cal.App.4th 1120, 1129.)

### C. We decline to find forfeiture.

Preliminarily, respondent contends appellant forfeited his instructional error claim by failing to object below. Appellant responds that the error is not subject to forfeiture because it pertains to the People's burden of proof and the trial court's sua sponte duty to "instruct on the law applicable to the facts of the case [citations], including the defendant's theory of defense." (*People v. Ramirez* (2015) 233 Cal.App.4th 940, 949 (*Ramirez*).)

We decline to find forfeiture. Although there is no indication in the record that appellant requested modification of the jury instructions or otherwise objected, section 1259 permits the appellate court to "review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." Appellant argues the instructions prevented the jury from considering his self-defense claim, effectively lowering the People's burden of proof. If appellant is correct, the alleged instructional error affected his substantial rights. Therefore, these claims are cognizable on appeal despite appellant's failure to object below. (See *People v. Hillhouse* (2002) 27 Cal.4th 469, 503 ["Instructions regarding the elements of the crime affect the substantial rights of the defendant, thus requiring no objection for appellate review."]; *People v. Flood* (1998) 18 Cal.4th 470, 482, fn. 7; *People v. Smithey* (1999) 20 Cal.4th 936, 976–977, fn. 7.)

### D. The jury was properly instructed.

CALCRIM No. 3472 as given in this case is a correct statement of law. (*People v. Eulian* (2016) 247 Cal.App.4th 1324 (*Eulian*).) In *People v. Enraca* (2012) 53 Cal.4th 735, our high court held that CALJIC No. 5.55, which is substantially similar to CALCRIM No. 3472, correctly states the law of self-defense in California. The high

court explained that the instruction is based on the principle that self-defense " ' "may not be invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical attack or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified." ' " (*People v. Enraca*, *supra*, at p. 761.)

Appellant contends CALCRIM No. 3472 as given was a misstatement of the law of self-defense because it did not specify that a defendant who provokes a fight as a pretext to use nondeadly force does not lose the right to self-defense. Appellant bases this claim on *Ramirez*, which held that, under the specific facts of that case, CALCRIM No. 3472 was not an accurate statement of the law because it effectively instructed the jury "that one who provokes a fistfight forfeits the right of self-defense if the adversary resorts to deadly force." (*Ramirez*, *supra*, 233 Cal.App.4th at p. 947.) In *Ramirez*, the defendants sought out rival gang members for a fight. (*Id.* at p. 944.) One of the defendants, Armando, brought a firearm in his sweatshirt pocket, but "did not set out intending to shoot anyone." (*Ibid.*) After the defendants located and confronted the rival gang members, a fistfight broke out. (*Ibid.*) During the fight, Armando saw one of the rival gang members raise his hand holding an object that looked like a firearm. (*Id.* at p. 945.) In response, Armando pulled his own firearm from his sweatshirt and fatally shot the rival gang member. (*Ibid.*)

The trial court instructed the jury using CALCRIM No. 3472. (*Ramirez*, *supra*, 233 Cal.App.4th at pp. 945–946.) In closing argument, the prosecutor argued that CALCRIM No. 3472 precluded any claim of self-defense even if the defendants only intended to instigate a fight involving nondeadly force. (*Ramirez*, *supra*, at pp. 945–946.) On appeal, *Ramirez* held that, given the evidence presented at trial, CALCRIM No. 3472, in conjunction with the prosecutor's argument, deprived the defendants of their self-defense theory. (*Ramirez*, *supra*, at pp. 947–948.) It reasoned that if the defendants

10.

intended to start a nonlethal fight, they did not lose the right to defend themselves when the victims responded with deadly force. (*Ibid.*) Thus, *Ramirez* concluded CALCRIM No. 3472 misstated the law by "foreclosing self-defense where a defendant contrives to start a quarrel as a pretext to use 'force,' whether deadly or nondeadly." (*Ramirez*, *supra*, at p. 950.)

We do not read *Ramirez* as holding that CALCRIM No. 3472 is an incorrect statement of law. Indeed, *Ramirez* specified that CALCRIM No. 3472 "states a correct rule of law in appropriate circumstances." (*Ramirez*, *supra*, 233 Cal.App.4th at p. 947.) Its conclusion that CALCRIM No. 3472 misstated the law was limited to the unique factual circumstances of the case; specifically, that the defendants only intended to instigate a fistfight. Thus, the import of *Ramirez* is that CALCRIM No. 3472 may require modification in "the rare case in which a defendant intended to provoke only a nondeadly confrontation and the victim responds with deadly force." (*Eulian*, *supra*, 247 Cal.App.4th at p. 1334.)[3]

Here, there was no evidence appellant intended to provoke a nondeadly confrontation. Unlike *Ramirez*, appellant never attempted to instigate a fistfight. According to his own testimony, appellant told Walker and Estrada to leave, and only drew his firearm in response to Walker's aggression. There was also no evidence that Walker responded with deadly force. The surveillance video made clear that Walker was

---

[3]    Following *Ramirez* and *Eulian*, the Judicial Counsel of California revised CALCRIM No. 3472 in September 2022 to include optional bracketed language to be given "if there is evidence that the defendant intended to provoke only a non-deadly confrontation and the victim responded with deadly force." (Bench Notes to CALCRIM No. 3472.) This optional bracketed language states: "[However, if the defendant used only non-deadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend (himself/herself) with deadly force and was not required to try to stop fighting.]"

Because appellant's trial occurred in December 2020, the trial court did not have the benefit of the September 2022 revisions to CALCRIM No. 3472.

unarmed, kept his arms at his sides, and never lunged at appellant or otherwise moved to attack him. Given the complete lack of evidence that appellant intended to provoke a nondeadly confrontation, or that Walker responded with deadly force, any modification of CALCRIM No. 3472 would have been unwarranted.

Appellant contends the alleged instructional error was compounded by the trial court's failure to instruct the jury with the following bracketed language from CALCRIM No. 3471: "[However, if the defendant used only non-deadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend (himself/herself) with deadly force and was not required to try to stop fighting(,/ or) communicate the desire to stop to the opponent[, or give the opponent a chance to stop fighting].]" However, as with the proposed modification to CALCRIM No. 3472 pursuant to *Ramirez*, this bracketed portion of CALCRIM No. 3471 was inapplicable because there is no evidence appellant provoked a nondeadly confrontation, nor is there evidence Walker responded with deadly force.

Appellant also argues the instructions as given misled the jury into believing it should not consider voluntary manslaughter based on imperfect self-defense. We see no basis for this claim. The jury was instructed on voluntary manslaughter based on imperfect self-defense with CALCRIM No. 571. CALCRIM Nos. 3471 and 3472 as given did nothing to undermine that instruction. Accordingly, we conclude the jury was properly instructed, and appellant's claim of instructional error lacks merit.

### E. Any presumed error was harmless.

Even if we found the trial court erred in failing to modify CALCRIM No. 3472, we would not find the error prejudicial. Depending upon the basis of the claimed error, instructional error is reviewed under either *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*), or *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). Under the

more stringent *Chapman* standard, which applies to errors of constitutional dimension, reversal is required unless the reviewing court can conclude beyond a reasonable doubt that the error did not contribute to the verdict. (*Chapman*, *supra*, 386 U.S. at p. 24.) Under the alternative *Watson* standard, which applies to errors of state law, reversal is not required unless it is reasonably probable the defendant would have obtained a more favorable result had the error not occurred. (*Watson*, *supra*, 46 Cal.2d at p. 836.)

We need not decide whether the *Chapman* or *Watson* standard for prejudicial error applies here because the error was harmless under either standard. The evidence establishing appellant's guilt was overwhelming. The only issue in dispute at trial was whether appellant acted in lawful self-defense. However, the evidence at trial, including the surveillance video of the shooting, conclusively undermined appellant's claim he actually and reasonably believed the immediate use of deadly force was necessary to defend himself. Walker was unarmed. He never came within arm's reach of appellant. When appellant fired the deadly shot, Walker was standing upright and had his arms at his sides. He made no threatening gestures or movements. The glove he held in his hand looked nothing like a weapon, and he did not, as appellant claimed, hold it in an aggressive manner. Appellant's testimony that Walker lunged at him immediately prior to appellant firing the shot was clearly shown by the surveillance video to be false.

Moreover, there is no basis to conclude modification to CALCRIM No. 3472 would have had any impact on the outcome of the trial because there was no evidence supporting the defense that appellant only intended to provoke a nondeadly confrontation. Appellant's defense at trial was centered on his claim that he was acting in self-defense in response to Walker's unprovoked aggression. Appellant testified his only intent in contacting Walker and Estrada was to get them to leave. He then claimed Walker became inexplicably angry at his request to leave and that he shot Walker when Walker tried to attack him. Neither appellant nor Estrada testified that appellant challenged

13.

Walker to a fistfight or threatened to use nondeadly force.  Instead, as the surveillance video made clear, appellant only used deadly force.  Thus, for a jury to rely on the defense that appellant intended to provoke only a nondeadly confrontation, it would have to reach a conclusion unsupported by the evidence and contrary to both the surveillance video and appellant's own testimony.

Considering the overwhelming evidence of guilt and the absence of any evidence appellant intended to provoke a nondeadly quarrel, we conclude beyond a reasonable doubt that the trial court's failure to modify CALCRIM No. 3472 did not contribute to the verdict.  Any presumed error was harmless.

**II.     The Prosecutor did not Mislead the Jury or Otherwise Engage in Misconduct.**

In a related and overlapping claim, appellant contends the trial court's instructional error was compounded by the prosecutor's comments during closing argument that appellant lost the right to self-defense because he was the initial aggressor.  Appellant also argues that the allegedly impermissible argument constituted prosecutorial misconduct.

**A.     Background.**

During closing argument, the prosecutor stated that under CALCRIM No. 3471, if the jury finds appellant was "the initial aggressor, then he is not entitled to self-defense." The prosecutor also stated that under CALCRIM No. 3472, appellant "[did] not have the right to self-defense if he provoke[d] a fight or quarrel with the intent to create an excuse to use force."  Based on these instructions, the prosecutor argued the evidence showed appellant was the "initial aggressor" and the "provocateur," and therefore was not entitled to self-defense.  The prosecutor also argued that appellant's claim that he acted in self-defense was unreasonable and not supported by the evidence.

14.

**B.      Standard of review.**

Prosecutorial misconduct occurs when "[a] prosecutor … uses deceptive or reprehensible methods to persuade the jury." (*People v. Parson* (2008) 44 Cal.4th 332, 359.) "When a claim of misconduct is based on the prosecutor's comments before the jury … ' "the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." ' " (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 305.)

**C.      The claim is forfeited.**

As a threshold matter, respondent contends appellant forfeited his claims of instructional error as it pertains to the prosecutor's arguments, and of prosecutorial misconduct, by failing to raise a timely objection. We agree. "To preserve a claim of prosecutorial misconduct for appeal, a defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the improper argument." (*People v. Gonzales and Soliz*, *supra*, 52 Cal.4th at p. 305.) Appellant did not object at trial to this aspect of the prosecutor's arguments. Accordingly, this claim is forfeited.

**D.      The prosecutor's arguments were not misleading.**

In any event, we also conclude the prosecutor did not misstate the law or mislead the jury. As we explained above, CALCRIM No. 3472 as given was an accurate statement of the law. Appellant argues the prosecutor's failure to specify that a defendant who provokes a fight as a pretext to use nondeadly force does not lose the right to self-defense was misconduct, because it provided the jury with an incomplete statement of the law. However, CALCRIM No. 3472 requires modification only where there is some evidence that the defendant intended to provoke a nondeadly quarrel. No such evidence existed here. Accordingly, appellant's prosecutorial misconduct claim fails on the merits.

**III.    Appellant's Murder Conviction was Supported by Substantial Evidence.**

Appellant contends the evidence at trial was insufficient to establish that he did not act in lawful self-defense.  He argues he reacted to Walker's aggression, did not believe he could safely escape, reasonably feared for his life, and only pulled the trigger as a last resort.

"To determine the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the prosecution to determine whether it contains [substantial] evidence that is reasonable, credible and of solid value, from which a rational trier of fact could find that the elements of the crime were established beyond a reasonable doubt." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955.)  We "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)  "We need not be convinced of the defendant's guilt beyond a reasonable doubt; we merely ask whether ' "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]' [Citation.]" (*People v. Tripp*, *supra*, at p. 955, italics omitted.)

We conclude appellant's murder conviction was supported by substantial evidence.  As we explained above, the evidence of guilt was overwhelming.  The surveillance video alone undermined appellant's self-defense claim.  It showed Walker was unarmed and not preparing to attack appellant or otherwise threatening him when he fired the fatal shot.  This conclusively established appellant was not in imminent danger when he shot Walker, and thus his belief in the need to use deadly force was unreasonable.

The evidence at trial also amply demonstrated appellant was the initial aggressor. The surveillance video showed appellant went out of his way to contact Walker and Estrada.  Estrada testified that appellant approached them with his gun visible, and after he demanded they leave, immediately began making vulgar insults.  While appellant had

16.

never previously interacted with Walker and Estrada, his prior statements showed he harbored significant animosity toward the homeless generally, suggesting he had a motive to act aggressively. The surveillance video also showed appellant started to draw his firearm the moment Walker began to stand up, threatening deadly force before Walker had even gotten to his feet. Given this evidence of unprovoked aggression, the jury had a clear basis to conclude appellant was not entitled to claim that he then acted in self-defense. Accordingly, any rational trier of fact could have found appellant guilty beyond a reasonable doubt, and this claim lacks merit.

## IV. Senate Bill No. 81 Does not Apply Retroactively to Appellant.

Appellant contends he is entitled to the retroactive application of Senate Bill No. 81 pursuant to *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) because his matter is not final on appeal. We disagree.

Effective January 1, 2022, Senate Bill No. 81 amended section 1385 to add subdivision (c) which provides, in part:

> "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

> "(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the [listed] mitigating circumstances ... are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(1)– (2).)

The mitigating circumstances listed in subdivision (c) of section 1385 include that if "[t]he application of an enhancement could result in a sentence of over 20 years … the enhancement shall be dismissed." (§ 1385, subd. (c)(2)(C).)

17.

Senate Bill No. 81's amendments to section 1385 expressly apply to "all sentencings occurring after January 1, 2022." (§ 1385, subd. (c)(7).) Appellant was sentenced on May 18, 2021. Thus, Senate Bill No. 81 does not apply to appellant.

Appellant claims that he is entitled to retroactive application of Senate Bill No. 81 based on *Estrada* retroactivity. Under *Estrada*, we presume, absent evidence to the contrary, that an amendatory statute "mitigat[ing] the possible punishment for a class of persons" is "presumptively retroactive and applie[s] to all persons whose judgments were not yet final at the time the statute took effect." (*People v. Frahs* (2020) 9 Cal.5th 618, 624.) However, as our high court has explained, "[t]he rule in *Estrada*, of course, is not implicated where the Legislature clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent." (*People v. Nasalga* (1996) 12 Cal.4th 784, 793.)

Here, Senate Bill No. 81 includes an express savings clause. It unequivocally states that the amendments to section 1385, subdivision (c), apply "to all sentencings occurring after January 1, 2022." Therefore, Senate Bill No. 81 is not retroactive.

Appellant claims that *People v. Sek* (2022) 74 Cal.App.5th 657, 674, holds that *Estrada* retroactivity applies to Senate Bill No. 81. Appellant is mistaken. In *People v. Sek*, the court remanded the matter for resentencing on other grounds. (*People v. Sek*, *supra*, 74 Cal.App.5th at p. 674.) The court held that, because any resentencing would necessarily take place after Senate Bill No. 81 became effective on January 1, 2022, Senate Bill No. 81 would apply when the defendant is resentenced. (*Ibid*.) *Sek* is inapplicable here because appellant is not being remanded for resentencing.

Appellant also contends that the prospective-only application of Senate Bill No. 81 violates his right to equal protection under the state and federal Constitutions. However, our high court has held that prospective-only application of ameliorative provisions does not violate equal protection. (*People v. Floyd* (2003) 31 Cal.4th 179, 189 ["Defendant's

equal protection argument presumes that the *Estrada* rule is constitutionally compelled. As we have stated repeatedly, it is not."].) Indeed, " 'A refusal to apply a statute retroactively does not violate the Fourteenth Amendment.' [Citation.] '[T]he Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time.' " (*Baker v. Superior Court* (1984) 35 Cal.3d 663, 668–669.) Appellant cites no contrary authority. Therefore, appellant's equal protection claim is without merit.

## **DISPOSITION**

The judgment is affirmed.


LEVY, Acting P. J.

WE CONCUR:


SNAUFFER, J.


DE SANTOS, J.