Filed 3/27/35  In re P.A. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re P.A., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>P.A.,<br><br>Defendant and Appellant. | F087897<br><br>(Super. Ct. No. 514539)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Rubén A. Villalobos, Judge.

Candice L. Christensen, under appointment by the Court of Appeal, Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, and Joseph Penney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Franson, Acting P. J., Peña, J. and Smith, J.

Minor P.A. contends on appeal that the juvenile court's true findings against him must be reversed and the matter remanded because there is insufficient evidence identifying minor as the person who shot the victim during the incident. The People disagree. We affirm.

## PROCEDURAL SUMMARY

On February 2, 2024, an amended juvenile wardship petition was filed in the Stanislaus County Superior Court pursuant to Welfare & Institutions Code section 602 alleging minor committed the following offenses: murder (Pen. Code,[1] § 187, subd. (a); count I); carrying a loaded firearm (§ 25850, subd. (a); count II); misdemeanor possession of ammunition by a minor (§ 29650; count III); and robbery (§ 211; count IV). As to counts I and IV, it was further alleged minor discharged a firearm (§ 12022.53, subd. (d)).

On February 2, 2024, minor denied the allegations.

From February 2 through February 22, 2024, the juvenile court held a contested jurisdictional hearing. The court found all allegations true and sustained the petition.

On April 11 and April 12, 2024, the juvenile court held a dispositional hearing. The court declared minor a ward of the court, committed minor to a secure youth treatment facility until the age of 25, with a baseline term of seven years, and made orders relating to custody credit, restitution, rehabilitation, and placement review.

On April 16, 2024, minor filed a notice of appeal.

## FACTUAL SUMMARY

J.G. posted a picture of a gun belonging to his friend, S.B., on a social media platform. Someone with the username "209.freebandz" messaged J.G. through the social media platform and asked if the gun was for sale. J.G. relayed the message to S.B., and S.B. decided to sell the gun to "209.freebandz."

---

[1] All statutory references are to the Penal Code unless otherwise noted.

Over the next several days, J.G. acted as the "middleman" between S.B. and "209.freebandz" in the sale of the gun over the social media platform. S.B. decided he would sell two guns to "209.freebandz," and the parties agreed on a price. "209.freebandz" suggested they meet at or near an alleyway to make the exchange. J.G. agreed to the sale on behalf of S.B.

On September 3, 2022, S.B. picked up J.G. in his car and they drove to the designated meeting place in the alleyway to make the sale. After they arrived, J.G. sent a message on the social media platform to "209.freebandz" to tell him they had arrived. "209.freebandz" responded that he was en route. A few minutes later, minor appeared and walked up to S.B.'s car. When minor reached the driver's side window, S.B. told him to go around to the passenger side and get in the back seat, behind where J.G. was seated. Minor did so.

Once minor was in the car, S.B. asked him where the money for the guns was. Minor responded by asking S.B. where the guns were. After some discussion, S.B. handed minor one of the guns. After minor inspected the gun, he pointed it at S.B. and said, " 'Give me everything you got.' " Before S.B. could react, minor fired multiple rounds at S.B., striking him.

J.G. testified that he froze when minor started shooting S.B. Minor then opened the car door and grabbed a bag containing S.B.'s medical supplies from the back seat.[2] As minor was getting ready to exit the car, another person wearing a partial facemask appeared from around the corner and ran towards the car. The person pointed a gun at J.G. and said, "Where are the guns at?" J.G. replied, " 'I don't know, I don't know, please just don't shoot.' " Minor and the other person then fled up the alleyway. After they left, J.G. got out of the car and started running in the opposite direction, down the alley toward the nearby cross street. He testified he was fearful for his life in the event

---

[2]    S.B. was paraplegic, paralyzed from the waist down.

minor and the other person returned to look for the second gun S.B. was planning to sell. J.G. testified he did not call 911 because he was shaken and scared.

Law enforcement received a report of an assault with a deadly weapon in the area of the alleyway and responded. After arriving on scene, they were informed by dispatch about an individual who had been shot in a car. They located S.B. in the driver's seat of the car. He was unresponsive and pronounced dead. His body was released to the coroner. His cause of death was multiple gunshot wounds. The coroner testified that one bullet had struck S.B. in the neck, passing through it, and two bullets had entered his right upper arm, with one of those also exiting his left chest, consistent with him being shot from the right passenger side of the car toward the left driver's side of the car where S.B. was sitting. Stippling was apparent on one of the bullet entry wounds in S.B.'s right arm, indicating he was shot at close range.

An expended round was recovered from the inside of the driver's door of S.B.'s car that had entered the door from the right. One of the bullets that struck S.B. in his right upper arm was recovered from S.B.'s left side, near his armpit. Two other bullet casings were recovered on the ground at the scene. A woman living near the alley testified she was in her home on the evening of September 3, 2022, when she heard "two large bangs." Approximately two or three minutes after she heard the bangs, she "got up and peeked out [her] window" and saw a car parked in the alley. She saw two people and movement on the driver's side of the car. She noticed the front passenger door was open and saw someone jump out of it and run down the alley toward the nearby cross street. The person had a hood on.

Several days later, J.G. told his probation officer about the incident. The probation officer put J.G. in touch with a detective to whom J.G. gave a statement.

When police presented J.G. with a "six-pack" photographic lineup that did not include minor's photograph, J.G. did not erroneously identify anyone else as minor. J.G. told police that he believed the person on the social media platform with the username

4.

"209.freebandz," with whom he communicated regarding the gun sale, had the first name "P[****]," which was the same as minor's first name. J.G. also identified minor to police and in court as the person in the profile picture for the "209.freebandz" social media account.

Police served a search warrant at minor's home. They found a firearm, a magazine, and ammunition. The firearm had pink debris on it that appeared to be insulation from the attic. Minor also had insulation material on his person.

Stanislaus County Sheriff's Department Detective Curtis Hankins stated he believed minor was depicted in surveillance videos collected from around the scene, based on the stature, build, and gait of the individual in the video matching that of minor.

The social media platform account "209.freebandz" was connected to minor's mother's phone number. Minor's brother told police that minor used the account name "209.freebandz" on the social media platform. Other family members of minor stated minor frequently changed his social media platform account names, and at least on some occasions, used an account name starting with "209." One of minor's sisters identified minor's social media account name as "209unknown."

J.G. identified minor in court as the person who got in the car and shot S.B. and noted he also recognized minor based on the profile picture from the "209.freebandz" social media account with which he had communicated when he arranged the gun sale. J.G. stated he was confident in his identification of minor.

**Defense**

No DNA evidence connected to minor was located at the scene of the crime. The car was not processed for gunshot residue. Police did not search for any fingerprints or DNA evidence from the car. The handgun found at minor's home could not be linked to the crime. Law enforcement did not note any bullet casings or debris in the backseat of the car where J.G. testified minor was sitting when he shot S.B. A detective testified he

did not find any surveillance videos from the area that definitively showed minor near the scene.

Law enforcement did not obtain any evidence that minor accessed the social media platform from a particular computer or particular cell phone. Hankins testified that he did not know whether or not the social media profile "209.freebandz" was a "shared account" between minor and other individuals. He also testified it is technically possible to "clone" a cell phone number and send cloned text messages.

On cross-examination, J.G. stated his ability to perceive the "height, weight, [and] hair color" of minor while minor walked around the car was "interfere[d with]" because it was dark outside and "[t]here were no lights."

## DISCUSSION

Minor contends there is insufficient evidence to identify him as the person who shot S.B. because J.G.'s testimony identifying him as the shooter was inherently improbable. He contends the juvenile court's ruling accordingly deprived him of a fundamentally fair hearing in violation of the Fourteenth Amendment to the United States Constitution. The People disagree. We agree with the People.

### A.    Background

The juvenile court stated it found J.G.'s testimony, including his identification of minor as the shooter, to be "extremely credible." It further stated it found the testimony by law enforcement officers to be "extremely credible." It also stated it found minor's brother, who testified he did not remember telling law enforcement that minor's social media profile account name was "209.freebandz," was not necessarily "being entirely truthful with the Court."

The juvenile court explained,

> "As to [J.G.], the Court finds that [J.G.]'s testimony was incredibly credible. That's a poor way of saying it. Extremely credible. The Court notes that in making its determination, the Court didn't see any deception on behalf of [J.G.] as he was testifying. The Court also agrees with the—

6.

[prosecution] that the lack of divergence from [J.G.]'s statements to the detective as well as the testimony under oath lends to the credibility.

"A couple of issues as to [J.G.]'s testimony that the Court wants to mention as far as it relates to credibility. It is not lost on the Court that [J.G.] did not immediately report the matter to law enforcement. [J.G.] didn't stop and render aid. I don't know if [J.G.] stopping and rendering aid would have made any difference, I don't know if him calling law enforcement immediately would have made any difference, but it is clear he didn't do that, and the Court wants to note that as it relates to the credibility determination.

"Also, there was some allegation that [J.G.] told the information to probation, [and] probation called … Hankins. The Court finds that that— and I have stated this previously on the record, that wasn't supported by the evidence that was presented here in court. The evidence was that … Hankins was contacted by probation. Now, I can think of no other way without extrapolating evidence as to how probation would have known other than [J.G.] telling probation, but that evidence simply is not in the record. [¶] And the Court will note that those two issues, specifically not rendering aid and also not communicating with law enforcement immediately, would be factors that would mitigate against his credibility. That being said, the testimony was extremely credible. [¶] … [¶]

"It seems that all parties involved were involved in illegalities, in illegal gun sales. And in speaking directly as it relates to [minor]—excuse me, [J.G.]'s testimony, the part that—that doesn't make a whole lot of sense to me is that—and I am going to turn directly to the testimony of [J.G.]—at this point they're in the car. [']We went to the location. Texted 209[.freebandz], told them we were there. He responded, ["]Okay.["] We met the sellers at the meet-up spot. [S.B.] said, … ["]Where's the money?["] [209.f]reebandz said, ["]Where's the guns?[" ']

"Now, this is the part that's troubling to the Court. [S.B.] gave him the guns. 209[.freebandz] pointed it at [S.B.] and he said, [']Give me everything you got.['] [J.G.] says, [']I saw the gun. I knew what it looked like, all black with a silver tip. [209.f]reebandz shot [S.B.]. I heard four bullets.['] So that leads me to believe that that 209.freebandz—let me back up a second, that [J.G.] is saying that 209.freebandz shot [S.B.] with his own gun. [¶] Now, why a person would, in the middle of a gun transaction, with someone that they only know in an alley, in the dark, would hand over a loaded gun doesn't make a whole lot of sense. And so the Court is noting that as it relates to the credibility determinations as to [J.G.]. The Court also notes that oftentimes crime and, for lack of a better

7.

word, shady business dealings in alleys don't make a lot of sense, and that could answer that question. The Court does note that as it relates to the credibility [of J.G.]. [¶] … [¶]

"The Court very specifically wants to make a finding that it has also considered whether or not any of the other unknown co-assailants could have been the shooter, and the Court finds that that, beyond a reasonable doubt, that it discounts those individuals as possible shooters based on the extremely credible testimony of [J.G.]."

The juvenile court also stated it had reviewed surveillance video from the area and found that the person shown in the videos near the scene—who law enforcement believed to be minor—had an appearance consistent with minor. Based on the testimony and circumstances, the court stated it also made a factual finding that minor was the person using the "209.freebandz" account on the social media platform to communicate with J.G. about the gun sale with S.B.

## B.     Law

An appellate court's review of a "minor's substantial evidence claim is governed by the same standard applicable to adult criminal cases." (*In re V.V.* (2011) 51 Cal.4th 1020, 1026; see *In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1328.) " 'To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Bolden* (2002) 29 Cal.4th 515, 553.) We must draw all reasonable inferences in support of the judgment. (*People v. Wader* (1993) 5 Cal.4th 610, 640.) "It is not our function to reweigh the evidence, reappraise the credibility of witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955; accord, *People v. Young* (2005) 34 Cal.4th 1149, 1181.) We look for substantial evidence, and we may not reverse a conviction for insufficiency of the evidence unless it appears that upon no hypothesis whatever is there sufficient

substantial evidence to support the conviction. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

The reviewing court "does not limit its review to the evidence favorable to the respondent." (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) Instead, it "must resolve the issue in light of the *whole record*—i.e., the entire picture of the defendant put before the jury—and may not limit [its] appraisal to isolated bits of evidence selected by the respondent." (*Ibid.*)

Although we review the whole record, "[t]he uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable." (*People v. Scott* (1978) 21 Cal.3d 284, 296; see *People v. Panah* (2005) 35 Cal.4th 395, 489.) "Testimony is not inherently improbable unless it appears that what was related or described could not have occurred. [Citation.] 'To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions.' " (*People v. Thomas* (1951) 103 Cal.App.2d 669, 672.) Furthermore, " ' " '[c]ircumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt.' " [Citations.]' " (*People v. Bradford* (1997) 15 Cal.4th 1229, 1329.) If the circumstances, plus all the logical inferences the trier of fact might have drawn from them, reasonably justify the trier of fact's findings, our opinion that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. (*Ibid.*; *Panah*, at pp. 487–488.)

"[W]ith respect to conflicts in the testimony or conflicting inferences which might be drawn from the evidence, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trier of fact." (*Helms v. Thomas* (1953) 120 Cal. App. 2d 265, 268–269.)

"Identification of the defendant by a single eyewitness may be sufficient .…" (*People v. Boyer* (2006) 38 Cal.4th 412, 480, superseded by statute on other grounds.) When "the circumstances surrounding [an] identification and its weight are explored at length at trial, where eyewitness identification is believed by the trier of fact, that determination is binding on the reviewing court." (*In re Gustavo M.* (1989) 214 Cal.App.3d 1485, 1497.)

However, mere speculation cannot support a conviction. (*People v. Marshall* (1997) 15 Cal.4th 1, 35; *People v. Reyes* (1974) 12 Cal.3d 486, 500.) "Substantial evidence must be more than evidence which merely raises a strong suspicion of guilt as mere suspicion will not support an inference of fact." (*People v. Martin* (1971) 9 Cal.3d 687, 695.) Reasonable inferences from the evidence must be based on substantial evidence, not on suspicion, speculation, supposition, surmise, or conjecture. (*People v. Raley* (1992) 2 Cal.4th 870, 891, superseded by statute on other grounds, as stated in *People v. Brooks* (2017) 3 Cal.5th 1, 62–63; *People v. Morris* (1988) 46 Cal.3d 1, 21, disapproved on other grounds in *In re Sassounian* (1995) 9 Cal.4th 535, 543, fn. 5.) A finding based on conjecture or surmise cannot be affirmed. (*People v. Memro* (1985) 38 Cal.3d 658, 695, overruled on other grounds in *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2.) This is because suspicion is not evidence; it only raises a possibility, which will not support an inference of fact. To justify a conviction, the trier of fact must be persuaded to a near certainty. Even a strong suspicion is insufficient to support the finding. (*People v. Thompson* (1980) 27 Cal.3d 303, 324.) A doubtful or uncertain fact must inure to the detriment of the party with the burden of proof on the issue. (*Reese v. Smith* (1937) 9 Cal.2d 324, 328; *People v. Tatge* (1963) 219 Cal.App.2d 430, 436.)

C.      *Analysis*

Here, the evidence identifying minor as the person who shot S.B. is sufficient to support the juvenile court's true findings against minor, as the court found J.G.'s

testimony "extremely credible," and minor being the shooter during the incident was not inherently improbable.

Minor argues the juvenile court's finding that J.G. was a credible witness when he identified minor as the shooter was unreasonable, because J.G.'s testimony was inherently improbable, as J.G. testified he could not see the shooter clearly due to darkness, and no physical evidence connected minor to the crime scene. Here, J.G. positively identified minor in court as the person who shot S.B., and testified that minor was also the same person in the profile photograph from the "209.freebandz" social media account, with whom he had been communicating about the sale of S.B.'s guns. He had also identified minor as the person in the profile picture for the "209.freebandz" account to police during the investigation. The court explained it found J.G.'s testimony regarding the identification of minor to be "extremely credible," despite J.G. waiting several days to report the incident to his probation officer and despite him testifying that it being dark outside during the incident made it more difficult to see minor well when he walked in front of the car to get into the back passenger seat.

As stated above, while we must determine that supporting evidence is reasonable, inherently credible, and of solid value, we must review the evidence in the light most favorable to the prosecution, and must presume every fact the factfinder could have reasonably deduced from the evidence. (See *People v. Bolden*, *supra*, 29 Cal.4th at p. 553; see also *People v. Wader*, *supra*, 5 Cal.4th at p. 640.) Further, issues of witness credibility are for the factfinder. (See *People v. Tripp*, *supra*, 151 Cal.App.4th at p. 955.) "Identification of the defendant by a single eyewitness may be sufficient to prove the defendant's identity as the perpetrator of a crime. [Citation.] Moreover, a testifying witness's out-of-court identification is probative for that purpose and can, by itself, be sufficient evidence of the defendant's guilt …. [Citations.] Indeed, 'an out-of-court identification generally has *greater* probative value than an in-court identification …." (*People v. Boyer*, *supra*, 38 Cal.4th at p. 480.)

11.

Further, nothing in the record makes J.G.'s testimony inherently improbable. "Testimony is not inherently improbable unless it appears that what was related or described could not have occurred. [Citation.] 'To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions.'" (*People v. Thomas*, *supra*, 103 Cal.App.2d at p. 672.) While there is no physical evidence such as fingerprints linking minor to the incident, the physical evidence from the incident also does not contradict J.G.'s testimony or identification of minor as the shooter of S.B. so as to make it either physically impossible or inherently improbable. The testimony of J.G. was in large part corroborated by the physical evidence found at the scene. He stated minor began shooting S.B., who was in the driver's seat, from the right rear passenger seat multiple times with a fully automatic handgun. The physical evidence showed at least two of the bullets, the ones that entered his right arm, passed through him from right to left. Further, police found an expended bullet inside the driver's side door of S.B.'s car that had entered the door from the inside of the car passing in a right to left direction. Two other bullet casings and debris from bullets were also found at the scene. The neighbor's testimony also does not make J.G.'s testimony inherently improbable. The neighbor did not testify that she witnessed the entire incident—only that she looked out the window two to three minutes after hearing the bangs, saw movement in the front of the car, then saw someone exit the front passenger seat and run down the alley toward the nearby cross street. This is consistent with J.G.'s testimony that minor shot S.B., a second person ran to the car and demanded the other gun from J.G., then minor and the second person both ran up the alley, and after they left, J.G. also exited the car and ran in the opposite direction down the alley toward the nearby cross street.

Here, the juvenile court found both J.G.'s in-court and out-of-court identification of minor as the person who shot S.B. to be "extremely credible." As identification by a

12.

single eyewitness may be sufficient to prove the identity of a perpetrator of a crime and J.G.'s testimony is not inherently improbable, J.G.'s identification of minor is sufficient evidence to support the court's true finding that minor shot S.B. during the attempted sale of S.B.'s guns.

## DISPOSITION

We affirm.[3]

---

**3**      As there is sufficient evidence to support the juvenile court's true finding against minor, there is no violation of the Fourteenth Amendment.