Filed 7/9/25  P. v. Barker CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH BARKER,<br><br>Defendant and Appellant. | F087524<br><br>(Super. Ct. No. BF189972B)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, and Joseph Penney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## **INTRODUCTION**

A jury convicted Joseph Barker (appellant) of second degree murder (Pen. Code, §§ 187, subd. (a), 189, subd. (b); count 1)[1] with an enhancement for the intentional discharge of a firearm proximately causing great bodily injury or death (§ 12022.53, subd. (d); hereinafter section 12022.53(d)), willful, deliberate, and premeditated attempted murder (§§ 664, subd. (a), 187, subd. (a); count 2) with an enhancement for the intentional discharge of a firearm (§ 12022.53, subd. (c)), and assault with a semiautomatic firearm (§ 245, subd. (b); count 3) with an enhancement for the personal use of a firearm (§ 12022.5, subd. (a)).  The trial court sentenced appellant to 47 years to life plus 20 years in state prison.

On appeal, appellant claims there was insufficient evidence to sustain the section 12022.53(d) firearm enhancement on count 1, and the finding on count 2 that the attempted murder was willful, deliberate, and premeditated.  We conclude substantial evidence supported the jury's findings.  We affirm.

## **FACTUAL BACKGROUND**

### I.      Surveillance Videos.

On May 4, 2022, appellant drove to a gas station in his black Chrysler sedan. Erica Gonzalez, his codefendant and girlfriend, was sitting in the front passenger's seat.[2]

The events at the gas station were captured on high resolution surveillance video cameras.  Recordings from two different camera angles were admitted into evidence and played for the jury.

The videos show appellant exit the gas station market with a soda cup and return to his car, which is parallel parked between the market and a set of gas pumps.  Gonzalez is still in the front passenger's seat.  After appellant enters, the car does not move.

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

[2]      Gonzalez filed a separate appeal (case No. F087704).

Approximately 30 seconds later, a grey sedan drives forward and stops facing the front of appellant's car, approximately one car length away. The grey sedan's path forward appears to be blocked by appellant's car and an SUV that had parked at the gas pumps next to appellant's car. Angel Bowdey (Angel) is in the driver's seat of the grey sedan. Her sister, Ammie Bowdey (Ammie), is in the front passenger's seat.[3]

After about 45 seconds, Angel drives the grey sedan forward and stops a few feet from appellant's car. Angel exits the grey sedan and approaches the front of appellant's car. She angrily bangs on the hood several times while appearing to yell. Appellant and Gonzalez open their respective car doors. Gonzalez exits, stands between the car and the open car door, and argues with Angel. Angel takes several steps toward Gonzalez, moving around the hood toward the passenger's side of the car. Ammie exits the grey sedan and walks behind Angel.

Appellant, who was still seated in the driver's seat, reaches through the car and hands Gonzalez a silver semiautomatic handgun. Gonzalez points the handgun in the direction of Angel and Ammie and pulls back the slide. Ammie grabs Angel by the arm and attempts to move her back, but Angel pulls her arm away. Appellant steps out of the driver's side of the car and points a black semiautomatic handgun at Angel. Ammie takes a step back, and appellant and Gonzalez open fire. It is unclear from the surveillance videos who fires first. Angel collapses to the ground. Appellant then sweeps his handgun to his left and briefly points it at Ammie as she retreats behind the grey sedan. It is unclear from the surveillance videos whether appellant discharges the handgun when he moves it in Ammie's direction. However, an officer who recovered and reviewed the surveillance videos testified it appears appellant "pointed his firearm at Ammie and shot."

---

**3**      For clarity, we refer to Angel Bowdey and Ammie Bowdey by their first names. No disrespect is intended.

Appellant and Gonzalez get back into appellant's car and flee. As they exit the gas station parking lot, Gonzalez rolls down her window and fires two additional shots. The bullets strike the wall of the gas station market, several feet away from Angel and Ammie.

## II. Ammie's Testimony.

Ammie testified she went with Angel to the gas station to pump gas. Angel stopped her car in front of appellant's car because she was trying to access the gas pump, but appellant's car was blocking her path. Angel started honking her horn, but appellant's car did not move. Angel then exited her car, banged on the hood of appellant's car, and asked them to move. Gonzalez stepped out of appellant's car and told Angel, "[B]ang on my hood one more time." Angel responded, "[Y]ou're not going to do nothing." Gonzalez pointed her handgun at Angel, and Angel stated, "[D]on't point it if you ain't going to use it."

Ammie tried to pull Angel away when she saw that Gonzalez had a handgun. Appellant then exited his car with his own handgun, and appellant and Gonzalez both started shooting. Ammie testified appellant and Gonzalez pointed their guns at both her and Angel. She stated appellant and Gonzalez shot Angel and tried to shoot her, but she ran behind the grey sedan.

Ammie went to check on Angel after appellant and Gonzalez began to drive away. She saw that Angel had been shot. She briefly backed away from Angel when Gonzalez fired shots from appellant's car while exiting the parking lot.

Emergency responders arrived and transported Angel to the hospital via ambulance, where she was pronounced deceased.

## III. Appellants Are Arrested Outside of Their Residence.

An officer arrived at the gas station soon after the shooting. He reviewed the surveillance footage from the gas station, which revealed the license plate number on appellant's black Chrysler sedan.

Minutes later, a police aerial unit located appellant's car parked outside of the residence to which it was registered. Officers in the aerial unit observed appellant and Gonzalez exit appellant's car and walk toward a silver Ford, which was also parked nearby. They entered and exited the silver Ford, then ran toward the residence. Appellant jumped over a fence into a nearby yard, where he was contacted and arrested by officers on the ground. Gonzalez hid in a crawl space under the residence. After numerous callouts by officers, she exited from the crawl space and surrendered.

Officers conducted a search of the silver Ford. In the trunk, they discovered a silver nine-millimeter caliber semiautomatic handgun, consistent with the firearm used by Gonzalez, and a black .45-caliber semiautomatic handgun, consistent with the firearm used by appellant. Both handguns were loaded.

## IV. Subsequent Investigation.

The handguns recovered from the trunk of the silver Ford were swabbed and tested for DNA. Appellant and Gonzalez could not be excluded as contributors to DNA on both handguns.

A forensic pathologist conducted an autopsy on Angel's body. He testified he observed two gunshot wounds. One gunshot entered the front left side of the chest and exited the lower right side of the back. Because the wound was through-and-through, no associated projectile was recovered from inside of the body. The pathologist explained he could not determine the caliber of the projectile that caused the gunshot wound to the chest because the size of the wound does not correlate to the caliber of the bullet.

Another gunshot travelled through the left thigh, then entered the right thigh and struck the femur. A projectile was recovered from the right thigh. The People's firearms expert examined the projectile and determined it was a nine-millimeter caliber bullet. She compared the projectile to a round test fired from Gonzalez's silver handgun and opined both were fired by the same firearm.

5.

A crime scene technician responded to the scene of the shooting to search for possible evidence. She observed four apparent bullet strikes on the outside wall of the gas station market. She located two bullet fragments on the ground.

The People's firearms expert explained that the two bullet fragments were a lead core and a jacket fragment. The jacket fragment was damaged, consistent with it having collided with something. The firearms expert compared the jacket fragment to a bullet test fired from appellant's black handgun and opined that both were fired from the same firearm. The lead core was unsuitable for analysis.

## V.     Codefendant's Evidence.[4]

Gonzalez testified appellant was her boyfriend and they lived together. They were both fentanyl users. They began selling drugs together to support their habits and carried guns for protection.

On the day of the shooting, Barker drove to a gas station so he could buy a soda. When appellant went inside of the market, she remained in the car and smoked fentanyl. Sometime after appellant got back into the car, she heard a thud and saw Angel yelling at them. She had never seen Angel or Ammie before. She stepped out of the car and started arguing with Angel but did not remember what was said. Appellant passed her a handgun, and she heard his gun fire. She reacted by pulling the trigger of her handgun, but she did not intend to do so. She claimed she was "oblivious" to everything around her because she was under the influence of fentanyl.

Gonzalez testified that as she and appellant exited the gas station parking lot, she fired two shots out of her window because she thought Angel and Ammie were going to chase them. She claimed she was scared and panicking and did not know what was happening.

---

**4**     Appellant did not present any evidence at trial.

Gonzalez called a clinical psychologist who assessed her while she was in custody. He diagnosed her with opiate use disorder and intermittent explosive disorder. He explained how these conditions may have affected her thoughts and actions.

## PROCEDURAL BACKGROUND

The Kern County District Attorney's Office filed an amended information charging appellant and Gonzalez with the murder of Angel (§ 187, subd (a); count 1) with a first degree murder allegation (§ 189, subd (a)) and a section 12022.53(d) firearm enhancement, the attempted murder of Ammie (§§ 664, subd. (a), 187, subd. (a); count 2) with an allegation the offense was willful, deliberate, and premeditated (§ 664, subd (a)) and a section 12022.53, subdivision (c) firearm enhancement, and assault with a semiautomatic firearm (§ 245, subd. (b); count 3) with a section 12022.5, subdivision (a) firearm enhancement. The People also charged Gonzalez with discharging a firearm from a motor vehicle at Angel and Ammie (§ 26100, subd. (c); count 4) with a section 12022.5 subdivision (a) firearm enhancement.

Appellant and Gonzalez were tried jointly. After all parties rested, the trial court granted Gonzalez's motion for a judgment of acquittal on count 2 pursuant to section 1118.1. The court denied appellant's section 1118.1 motions as to counts 1 and 2.

The jury convicted appellant and Gonzalez of all remaining charges and enhancements, except it found not true the first degree murder allegations on count 1 that the murder was committed by means of premeditation and deliberation. Consequently, appellant and Gonzalez were convicted of second degree murder on count 1.

## DISCUSSION

### I. The Jury's Finding That the Attempted Murder of Ammie Was Willful, Deliberate, and Premeditated Was Supported by Substantial Evidence.

On count 2, the jury convicted appellant of the attempted murder of Ammie and found true the allegation that the attempted murder was willful, deliberate, and premeditated. Appellant does not challenge the attempted murder verdict, but contends

the evidence was insufficient to sustain the additional finding of premeditation and deliberation.

## A.     *Standard of review*.

"To determine the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the prosecution to determine whether it contains [substantial] evidence that is reasonable, credible and of solid value, from which a rational trier of fact could find that the elements of the crime were established beyond a reasonable doubt." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955.)  We "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)  "We need not be convinced of the defendant's guilt beyond a reasonable doubt; we merely ask whether ' "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*People v. Tripp*, *supra*, at p. 955, italics omitted.)

## B.     *Substantial evidence supported the jury's finding*.

"Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Superior Court (Decker)* (2007) 41 Cal.4th 1, 7.)  Section 664, subdivision (a), prescribes an increased sentence for attempted murder that is " ' "willful, deliberate, and premeditated." ' " (See *People v. Favor* (2012) 54 Cal.4th 868, 877.)

"An attempted murder is premeditated and deliberate if it occurs ' " 'as the result of preexisting thought and reflection rather than unconsidered or rash impulse.' " ' " (*People v. Cardenas* (2020) 53 Cal.App.5th 102, 121, quoting *People v. Burney* (2006) 47 Cal.4th 203, 235.)  In this context, " '[d]eliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080.)  " 'The process of premeditation and deliberation does not require any extended period of time.  "The true test is not the duration of time as much as it is the extent of the reflection.  Thoughts may

8.

follow each other with great rapidity and cold, calculated judgment may be arrived at quickly.…" ' "  (*Ibid.*)

As noted above, appellant's substantial evidence challenge is limited to the jury's finding the attempted murder was deliberate and premeditated.  He does not contest the jury's verdict on the underlying attempted murder conviction, conceding that "the jury could [have found] that appellant fired a shot in Ammie's direction."  Instead, he contends the evidence at most "reflects a sudden and rash impulse to fire one parting shot at Ammie just before fleeing from the scene."

Appellant's claim is belied by his actions, which were captured on high resolution surveillance videos.  We have reviewed the videos in detail, and they strongly support the jury's finding appellant acted with premeditation and deliberation.

The videos show that after Angel approached appellant's car and banged on the hood, appellant did not immediately exit.  Instead, he reached across the inside of the car and passed a loaded handgun to Gonzalez.  By ensuring his codefendant was similarly armed, appellant consciously doubled the lethality they were prepared to inflict.  This evinced not only a clear intent to kill, but preparation and planning.  Moreover, when appellant passed the handgun, Ammie had already exited the grey Sedan and moved toward Angel, suggesting appellant was aware of Ammie's presence as he prepared the ensuing attack.  Once appellant passed the handgun, he immediately exited the car and opened fire with his own handgun, further reflecting his preexisting intent to kill.  When appellant began shooting at Angel, Ammie was still standing near her.  After Angel fell to the ground, appellant redirected his fire toward Ammie as she fled behind the grey sedan, indicating he intended to kill Ammie as well as Angel.

Appellant argues the relatively brief duration of the altercation undermined the jury's finding that appellant acted with premeditation and deliberation.  However, it is well established that premeditation and deliberation can occur in a brief period of time. (*People v. Brady* (2010) 50 Cal.4th 547, 563; *People v. Koontz, supra,* 27 Cal.4th at

9.

p. 1080; *People v. Memro* (1995) 11 Cal.4th 786, 863.) "The act of planning—involving deliberation and premeditation—requires nothing more than a 'successive thought[] of the mind.'" (*People v. San Nicolas* (2004) 34 Cal.4th 614, 658.) True, the surveillance videos show appellant started shooting only 14 seconds after Angel banged on the hood of his car. But under California law, this was sufficient time for appellant to formulate the intent to kill and reflect on the nature and consequences of his actions. (See *People v. Nelson* (2011) 51 Cal.4th 198, 213 [defendant "had ample time to premeditate and deliberate" when he took up a firearm, climbed out of a moving car, sat on the window frame, reached across the roof, braced himself, and aimed at the victim]; *People v. San Nicholas, supra,* 34 Cal.4th at p. 658 [brief period between seeing the victim's reflection in a mirror and stabbing her was "adequate for defendant to have reached the deliberate and premeditated decision to kill"].)

Appellant notes the preliminary hearing magistrate did not hold appellant to answer for the attempted murder of Ammie,[5] and the trial court granted Gonzalez's motion for a judgment of acquittal on the attempted murder charge pursuant to section 1118.1. According to appellant, this procedural history reveals "the weakness of the evidence." We fail to see how these prior judicial determinations are relevant to our independent assessment of whether the evidence at *trial* supported the jury's finding that *appellant* acted with premeditation and deliberation.

Next, appellant posits the jury's finding the attempted murder was deliberate and premeditated was inconsistent with its finding that the murder of Angel was *not* deliberate and premeditated. Whether the verdicts were consistent is not relevant to our substantial evidence review. As appellant concedes, "inconsistent verdicts are allowed to stand if the verdicts are otherwise supported by substantial evidence." (See *People v.*

---

[5]    After the preliminary hearing, People charged appellant with attempted murder in the information, and the trial court subsequently denied appellant's motion to set the attempted murder count aside pursuant to section 995.

10.

*Miranda* (2011) 192 Cal.App.4th 398, 405.) We find it instructive, however, to highlight the differences in the evidence of premeditation and deliberation as to both charges. Most significantly, appellant turned his handgun toward Ammie *after* he shot at Angel, and she collapsed to the ground. Thus, before shooting at Ammie, appellant had an additional moment to reflect and to personally observe the fatal consequences of discharging a firearm at another human being.

Finally, appellant cites *People v. Anderson* (1968) 70 Cal.2d 15, where the Supreme Court "said that generally [findings of premeditation and deliberation] are affirmed when (1) there is evidence of planning, motive, and a method of killing that tends to establish a preconceived design; (2) extremely strong evidence of planning; or (3) evidence of motive in conjunction with either planning or a method of killing that indicates a preconceived design to kill." (*People v. Mincey* (1992) 2 Cal.4th 408, 434.) But since *Anderson* was decided, the Supreme Court has repeatedly "emphasized that its guidelines are descriptive and neither normative nor exhaustive, and that reviewing courts need not accord them any particular weight." (*People v. Halvorsen* (2007) 42 Cal.4th 379, 420; see *People v. Young* (2005) 34 Cal.4th 1149, 1183; *People v. Perez* (1992) 2 Cal.4th 1117, 1125.) "*Anderson* provides 'a framework to aid in appellate review,' but it does not 'define the elements of first degree murder or alter the substantive law of murder in any way.' " (*People v Morales* (2020) 10 Cal.5th 76, 89.) Thus, the *Anderson* guidelines do not limit our analysis.

To conclude, the evidence showed appellant passed a loaded handgun to his co-defendant, then exited his car and fired multiple shots, including at Ammie. Accordingly, our review for substantial evidence reveals that on this record, a rational jury could have found appellant attempted to kill Ammie with deliberation and premeditation, and this claim lacks merit.

**II.    Substantial Evidence Supported the Section 12022.53(d) Firearm Enhancement.**

Appellant contends the evidence was insufficient to sustain the jury's true finding as to the section 12022.53(d) firearm enhancement on the murder conviction (count 1). Specifically, he alleges the evidence did not establish the bullets he fired actually struck Angel.

The section 12022.53(d) enhancement applies where a defendant, "in the commission of a [specified felony, including murder], personally and intentionally discharges a firearm and proximately causes great bodily injury … or death."

" '[A] proximate cause of great bodily injury or death is an act or omission that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act or omission the great bodily injury or death and without which the great bodily injury or death would not have occurred.' " (*People v. Bland* (2002) 28 Cal.4th 313, 335 (*Bland*).)  There may be more than one proximate cause.  (*Ibid.*) " 'When the conduct of two or more persons contributes concurrently as a cause of the [great bodily injury or death], the conduct of each is a cause of the [great bodily injury or death] if that conduct was also a substantial factor contributing to the result.' "  (*Ibid.*; *People v. Sanchez* (2001) 26 Cal.4th 834, 847.)

Applying the above principles, our high court explained in *Bland* that "section 12022.53(d) does not require that the defendant fire a bullet that directly inflicts the harm." (*Bland, supra,* 28 Cal.4th at p. 338.)  "A person can proximately cause a gunshot injury without personally firing the weapon that discharged the harm-inflicting bullet." (*Id.* at p. 337.)  "The enhancement applies so long as defendant's personal discharge of a firearm was a proximate, i.e., a substantial, factor contributing to the result." (*Id.* at p. 338.)  Thus, where multiple shooters fire at a victim, but it cannot be determined which of the shooters' bullets actually struck the victim, each shooter is subject to the section 12022.53(d) enhancement so long as his or her conduct was a

substantial factor contributing to injury. (*Bland,* at pp. 337–338; see *People v. Sanchez, supra,* 26 Cal.4th at pp. 845–849.)

Appellant argues that in the instant case our substantial evidence review is limited to whether appellant personally inflicted (i.e., directly caused) great bodily injury or death because the trial court did not instruct on principles of proximate cause. In the pattern instruction setting forth the elements of the section 12022.53(d) enhancement, CALCRIM No. 3149, the court omitted the bracketed language defining proximate cause.[6] The court only instructed the jury it must find that appellant's "act caused great bodily injury or death to a person." In appellant's view, the substantial evidence requirement cannot be satisfied by evidence that appellant's shots proximately caused injury or death, because the jury was not instructed on that theory. (See *People v. Kunkin* (1973) 9 Cal.3d 245, 251 ["We, of course, cannot look to legal theories not before the jury in seeking to reconcile a jury verdict with the substantial evidence rule"].)

Regardless of whether our review encompasses proximate cause or is limited to personal infliction of great bodily injury or death, the evidence was sufficient to sustain the section 12022.53(d) enhancement because the jury could have reasonably found one of appellant's gunshots struck Angel. The autopsy revealed Angel sustained a gunshot wound that entered the left chest and exited the right back. Because the wound was through-and-through, and no associated projectile was recovered, there was no forensic evidence tying the wound to either handgun. However, the surveillance videos clearly show appellant pointed his handgun at Angel and fired multiple shots. Based on our review of the videos, and considering the apparent trajectory of the shots, the position of Angel's body, and the location of the injury, we conclude a rational jury could have

---

**6** The omitted bracketed language specifies that an act causes great bodily injury or death if it is the "direct, *natural and probable consequence* of the act," and is a "substantial factor is causing the [injury or death]." (CALCRIM No. 3149.)

found appellant fired the shot that struck Angel in the left chest.[7]  Therefore, substantial evidence supported the jury's section 12022.53(d) finding, and we reject this claim.

### III.    The Indeterminate Abstract of Judgment Has Clerical Errors Which Must be Corrected.

The parties agree, as do we, that the indeterminate abstract of judgment contains two clerical errors.  The trial court is directed to make the following corrections.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [appellate courts have inherent power to correct clerical errors in an abstract of judgment].)"

First, on count 1, appellant was convicted of second degree murder.  The indeterminate abstract of judgment, however, erroneously lists the conviction as "MURDER: FIRST DEGREE."  We direct the trial court to amend the indeterminate abstract to reflect appellant was convicted of second degree murder on count 1.

Second, on count 2, the indeterminate abstract of judgment lists appellant's punishment as both "life with the possibility of parole," and as "7 years to life."  We agree with the parties that listing the punishment twice in two different ways is potentially confusing.  The punishment for willful, deliberate, and premeditated

---

**7**     During rebuttal argument, the prosecutor's asserted that the jury can conclude that appellant's bullet struck Angel "based off of the position of her body, her reaction, and where he's shooting."  Defense counsel objected that the argument "[m]istates the evidence."  The trial court sustained the objection, stating, "The Court finds there's no evidence that the bullet that hit [Angel] was fired by [appellant]."

After closing argument, the trial court reversed its ruling based on its further review of the surveillance videos.  The court explained: "I want to make it clear I'm not saying there is sufficient evidence to support that [appellant] was the shooter, but I think there is sufficient evidence for you as a jury to review the evidence in this case and make your own determination.  I don't want to influence you."  The court also reminded the jury that it should not consider its comments on the evidence.

We reject appellant's suggestion that the trial court's remarks are relevant to his sufficiency of the evidence challenge.  Our role is to determine whether the jury's findings were supported by substantial evidence, and the court's comments are not evidence.  (See *People v. Eubanks* (1996) 14 Cal.4th 580, 600, fn. 9; CALCRIM No. 3530.)

attempted murder is most accurately stated as "life with the possibility of parole."**8** Therefore, we direct the trial court to amend the indeterminate abstract to omit the duplicative reference to a sentence of "7 years to Life" on count 2.

## DISPOSITION

The trial court is directed to prepare an amended indeterminate abstract of judgment reflecting the following corrections. On count 1, the indeterminate abstract of judgment shall reflect appellant was convicted of second degree murder. On count 2, the indeterminate abstract of judgment shall omit the duplicative reference to a sentence of "7 years to Life." The trial court shall then forward the amended abstract of judgment to the appropriate entities. In all other respects, the judgment is affirmed.

LEVY, Acting P. J.

WE CONCUR:

DETJEN, J.

FRANSON, J.

---

**8** Willful, deliberate, premeditated attempted murder is punishable by life in prison with the possibility of parole. (§ 664, subd. (a).) A sentence of life in prison without a specified minimum period of confinement carries a minimum term of seven years before parole eligibility. (§ 3046, subd. (a)(1); see *People v. Jefferson* (1999) 21 Cal.4th 86, 97.)